234 P.3d 288 (2010)
STATE of Washington, Respondent,
v.
Kevin Lee CROSS, Appellant.
No. 38498-1-II.
Court of Appeals of Washington, Division 2.
June 29, 2010.
As Amended July 1, 2010.
*289 Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
Stephen D. Trinen, Pierce County Prosecutor's Ofc, Tacoma, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 A jury found Kevin Cross guilty of first degree unlawful possession of a firearm, gross misdemeanor harassment, resisting arrest, and obstructing a law enforcement officer. On appeal, Cross challenges the search of a vehicle incident to his arrest in light of Gant,[1] the sufficiency of evidence supporting his gross misdemeanor harassment conviction, and the inclusion of his 1991 conviction *290 in the calculation of his offender score. In a statement of additional grounds for review (SAG),[2] Cross also challenges the sufficiency of evidence supporting his unlawful possession of a firearm conviction and the trial court's decision finding Reiko Mullens competent to testify despite her medical history of multiple brain surgeries.
¶ 2 Cross failed to preserve for review any error related to the vehicle search incident to arrest. In addition, the trial court did not abuse its discretion when it found Reiko Mullens competent to testify; sufficient evidence supports Cross's convictions; and the trial court properly included Cross's 1991 conviction, which did not wash out, when calculating Cross's offender score. We affirm.

FACTS

Background
¶ 3 On April 23, 2008, Tacoma Police Officer Samuel Lopez-Sanchez conducted a traffic stop of a vehicle. The driver, Joshua Mullens, failed to produce a driver's license and vehicle registration and Lopez-Sanchez ordered him out of the car to place him under arrest for reckless driving and driving without a license. Once out of the car, Mullens began resisting arrest. When Lopez-Sanchez tried to handcuff him, Mullens pulled away from him and dove into the vehicle, reaching toward the vehicle's center console. Lopez-Sanchez managed to pull Mullens from the car before he could reach the center console.
¶ 4 Officer Lopez-Sanchez also observed a passenger, later identified as Cross,[3] in the front passenger seat of the vehicle. The passenger appeared "extremely nervous," had visibly shaky hands, and was sweating profusely. 4 Report of Proceedings (RP) at 236. When Lopez-Sanchez and Mullens began struggling, Cross made furtive gestures toward his waist. Fearful that Cross was reaching for a weapon, Lopez-Sanchez ordered Cross to put his hands in the air. Cross refused to comply. While continuing to fear for his safety, Lopez-Sanchez pulled Mullens to the back of Mullens's vehicle and nearer the police car to put distance between himself and Cross. Lopez-Sanchez lost sight of Cross during his evasive maneuver, but he heard a "slapping sound" that he described as "like an object striking another object" come from inside the vehicle. 4 RP at 240. As soon as he could, Lopez-Sanchez called for backup.
¶ 5 Ultimately, Officer Lopez-Sanchez was able to handcuff Mullens and place him in the back of his patrol car. Meanwhile, Lopez-Sanchez saw Cross attempting to flee the scene on foot. Cross ignored orders to "stop." Lopez-Sanchez chased Cross through a residential neighborhood. The chase ended when Cross jumped over a six-to eight-foot tall wooden fence and found himself trapped in a yard. When Lopez-Sanchez caught up to him, Cross put up his fists in an offensive fighting stance. After missing Cross with his stun gun, Lopez-Sanchez leg swept Cross to the ground, applied the stun gun directly to Cross's back, and handcuffed him.
¶ 6 Officer Jared Williams arrived on the scene and spotted Officer Lopez-Sanchez walking back to his patrol car with Cross in handcuffs. Cross was "very hostile and agitated," and Williams had to hold him against the trunk of his patrol car so that Lopez-Sanchez could frisk Cross for weapons. 5 RP at 328. No weapons were found on Cross, who was then placed in Williams's patrol car. Cross yelled obscenities as Williams read him his Miranda[4] rights. Cross refused to identify himself. Another officer who arrived on the scene recognized Cross, retrieved a police report and booking photo from a previous incident, and used these to identify Cross.
¶ 7 Next, while Mullens and Cross were secured in separate patrol cars, Officers Lopez-Sanchez and Williams searched the vehicle, *291 which belonged to Mullens's sister, Reiko Mullens. The officers found two guns. Lopez-Sanchez found a loaded 9 mm semiautomatic handgun and holster in the unlocked center console compartment. Williams found a loaded .357 magnum revolver in the glove compartment. Lopez-Sanchez believed that the slapping sound he had heard while he struggled to subdue Mullens was the glove compartment slamming shut.
¶ 8 When Officer Williams asked Cross about the guns, Cross replied that "he did not know that the guns were in the vehicle and that he was just getting a ride home." 1 RP at 60. He also stated that "he was a homeless junkie." 1 RP at 60. When Officer Lopez-Sanchez asked Mullens about the guns, he responded that they belonged to his sister. Mullens also said that he was on his way to "take care of a problem," referring to two individuals allegedly involved in a recent domestic violence dispute with his sister, but he denied any intent to use the guns to address this "problem." 4 RP at 273.
¶ 9 While Officer Williams waited for Mullens's car to be impounded, Cross, who was handcuffed and seated in the back of the patrol car, made several inappropriate racial and sexual comments about Williams and stated that "he would kick [Williams's] ass if he wasn't in handcuffs."[5] 5 RP at 331.

Procedure
¶ 10 On April 24, 2008, the Pierce County Prosecuting Attorney's office charged Cross with two counts of first degree unlawful possession of a firearm, a class B felony under RCW 9.41.040(1)(b), and one count of resisting arrest, a misdemeanor under RCW 9A.76.040. On June 19, 2008, the State filed an amended information adding one count of harassment (bodily injury), a gross misdemeanor under RCW 9A.46.020(2), and one count of obstructing a law enforcement officer, a gross misdemeanor under RCW 9A.76.020(3).
¶ 11 A joint jury trial for Cross and Mullens commenced on September 22, 2008. The trial court granted Cross's motion to sanitize the racial and sexual remarks that he had made to Officer Williams. Although Cross initially indicated an intent to move to suppress any evidence seized during the vehicle's search in his omnibus application, he never filed a motion to suppress nor did he request a CrR 3.6 hearing. During trial, Cross's counsel explicitly mentioned abandoning a CrR 3.6 motion. Also, Cross did not object to the admission of the firearms found in the car or to the State's questioning of witnesses about the guns; he only objected to the narrative nature of a response by Officer Lopez-Sanchez and to the relevance of questions regarding the actions required to fire the loaded .357 magnum revolver.
¶ 12 Cross stipulated to a prior felony conviction that was a serious offense. On October 3, 2008, the trial court dismissed, with prejudice, Cross's unlawful possession of a firearm count related to the 9 mm handgun found in the center console of the car. That same day, the jury entered verdicts finding Cross guilty on all other counts.
¶ 13 At Cross's October 24, 2008 sentencing, the State provided certified copies of Cross's prior felony judgments and sentences as well as an uncertified computer-generated District and Municipal Court Information System (DISCIS) printout listing Cross's prior nonfelony criminal convictions. Cross objected to the use of his 1991 class C felony conviction for third degree assault in the calculation of his offender score, arguing that the State had failed to meet its burden to prove that he had not spent five years in the community crime free. Specifically, he argued that because the State presented only a DISCIS printout listing several misdemeanor convictions during the relevant five-year wash-out period, that it had failed to present reliable evidence to satisfy its burden of proof and his 1991 class C felony conviction could not be included in his offender score. The trial court admitted the DISCIS printout, *292 ruled that the 1991 assault conviction did not wash out, and calculated Cross's offender score at 6. The trial court imposed a 75-month standard range sentence for the first degree firearm conviction and a concurrent 365-day sentence for his other misdemeanor and gross misdemeanor convictions. Cross filed this timely appeal.

ANALYSIS

Vehicle Search
¶ 14 For the first time on appeal, Cross challenges the search of the vehicle incident to arrest, citing Gant.[6] The State argues that Cross failed to preserve this issue for appeal. State v. Millan, 151 Wash. App. 492, 212 P.3d 603 (2009), review granted, 168 Wash.2d 1005, 226 P.3d 781 (2010). We agree with the State that Cross failed to preserve this issue for our review.
¶ 15 In Millan, we held that Millan failed to preserve an alleged error in the admission of a gun obtained during a search of his vehicle incident to his arrest because he did not file a motion to suppress at trial.[7] 151 Wash.App. at 502, 212 P.3d 603; see also State v. Baxter, 68 Wash.2d 416, 423, 413 P.2d 638 (1966) ("The exclusion of improperly obtained evidence is a privilege and can be waived."); State v. Mierz, 72 Wash.App. 783, 789, 866 P.2d 65, 875 P.2d 1228 (1994) (a trial court does not err when considering evidence that a defendant did not move to suppress), aff'd, 127 Wash.2d 460, 901 P.2d 286 (1995); State v. Donohoe, 39 Wash.App. 778, 782 n. 5, 695 P.2d 150 ("Because a defendant can receive complete constitutional protection against the use of illegally obtained evidence through superior court suppression hearing procedures, and because the rights afforded by these constitutional provisions are not `trial rights' or part of the `truth-finding function' they can be waived."), review denied, 103 Wash.2d 1032 (1985). The Millan court reasoned that "federal courts, applying plain error review, recognize the general rule that a criminal defendant must preserve an error at trial to raise the issue on appeal," citing cases from 12 circuits of the federal Court of Appeals. 151 Wash.App. at 497-98, 212 P.3d 603. Further, Washington appellate courts only consider issues raised for the first time on appeal that are manifest errors affecting a constitutional right. RAP 2.5(a); Millan, 151 Wash.App. at 499, 212 P.3d 603. And while there is no question that search and seizure issues are constitutional in nature, even when there is a high probability that a motion to suppress might have succeeded, the absence of a motion to suppress fails to produce an error eligible for review by this court. See Millan, 151 Wash.App. at 500, 212 P.3d 603 (citing Mierz, 127 Wash.2d at 468, 901 P.2d 286 (a defendant waives the right to challenge the admission of evidence gained in an illegal search or seizure by failing to move to suppress the evidence at trial)).
¶ 16 Here, although Cross originally indicated an intention to file a motion to suppress any evidence obtained from an illegal search of the vehicle, no motion to suppress was ever filed. Without a motion to suppress the guns or an objection to their admission in evidence at trial, there is no ruling or possible evidentiary error on the record for us to review. Millan, 151 Wash.App. at 502, 212 P.3d 603; see also State v. Harris, 154 Wash.App. 87, 102, 224 P.3d 830 (2010) (Quinn-Brintnall, J., dissenting) (stating that "relevant physical evidence is admissible at trial unless the party seeking to exclude it files a motion to suppress"). Cross did not object to the admission of either gun.
¶ 17 Cross asserts that, notwithstanding his failure to file a motion to suppress at trial, the record on appeal is fully developed for review. For reasons explained in Millan, we disagree. Without a hearing on a motion to suppress, the full circumstances of the search are not contained in the record. Cross's failure to object to the admissibility of the guns is a failure to follow the steps *293 necessary to preserve this issue for review. And absent a ruling on a motion to suppress or a decision overruling an objection to the admission of the guns in evidence, there is nothing for us to review.[8]

Witness Competency
¶ 18 In his SAG, Cross appears to challenge Reiko Mullens's competency to testify at trial due to her four previous brain surgeries. A person is not competent to testify if she is of "unsound mind, or intoxicated at the time of [her] production for examination." RCW 5.60.050(1). Witness competency determinations rest primarily with the trial judge who "sees the witness, notices his manner, and considers his capacity and intelligence." State v. Swan, 114 Wash.2d 613, 645, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). We review a trial court's competency determination for a manifest abuse of discretion. Swan, 114 Wash.2d at 645, 790 P.2d 610; State v. Bishop, 51 Wash.2d 884, 885, 322 P.2d 883 (1958). An abuse of discretion occurs when the trial court's decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). A review of the record reveals that Cross raised competency concerns based on Reiko Mullens's own testimony that she has problems with her long- and short-term memories. The trial court heard arguments and entered a lengthy colloquy discussing its perception of Reiko Mullens's competency, stating in part,
It is possible that she was genuinely confused about some things, but certainly not about everything, and certainly not to the extent that the Court feels that she was truly incompetent to testify.
6 RP at 532. Based on our review of the record, it is clear that the trial court did not abuse its discretion when it ruled that Reiko Mullens was competent to testify. To the extent Cross is really challenging Reiko Mullens's credibility, credibility determinations are for the trier of fact and are not subject to review on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).

*294 Sufficiency of Evidence

A. Harassment
¶ 19 Cross next challenges the sufficiency of evidence supporting his gross misdemeanor harassment conviction, arguing that the State failed to prove Officer Williams had a reasonable fear that the threat to "kick [his] ass if [I] wasn't in handcuffs" would be carried out. 5 RP at 331. Specifically, Cross argues that (1) Williams could not have developed a reasonable fear of bodily harm because of the conditional nature of his threat, (2) Williams testified he did not have a fear of bodily harm as a result of Cross's threat, and (3) Williams's actions after the threat showed that he did not have a fear of bodily harm. We hold that sufficient evidence supports Cross's gross misdemeanor harassment conviction.
¶ 20 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. Circumstantial evidence and direct evidence are equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). The trier of fact makes credibility determinations that we do not review on appeal. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
¶ 21 Under RCW 9A.46.020(1), in order to prove that Cross committed the crime of harassment, the State must show that,
(a) [w]ithout lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or

(ii) To cause physical damage to the property of a person other than the actor; or

(iii) To subject the person threatened or any other person to physical confinement or restraint; or

(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
(Emphasis added.)
¶ 22 RCW 9A.46.020(2) outlines the requirements for determining if the harassment committed is a felony or a gross misdemeanor stating,
(a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.
(b) A person who harasses another is guilty of a class C felony if either of the following applies: (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; or (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person.
¶ 23 In this case, Cross did not threaten to kill Officer Williams and the State charged him with a gross misdemeanor harassment violation rather than with a felony harassment violation. To prove a gross misdemeanor violation of this statute, the State was required to prove "that the person threatened was placed in reasonable fear of `the threat'the actual threat made" and prove that the harm threatened and the harm feared are the same. State v. C.G., 150 Wash.2d 604, 609, 80 P.3d 594 (2003). Conditional threats fall within the definition of "threat" established in RCW 9A.04.110, a chapter and section establishing definitions that apply to RCW 9A.46.020. See State v. Edwards, 84 Wash.App. 5, 12, 924 P.2d 397 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). The State is not required to *295 prove a "nonconditional present threat" where the charging statute and applicable statutory definitions do not establish such an element. See Edwards, 84 Wash.App. at 12, 924 P.2d 397. Assuming evidence shows the victim's subjective fear, the standard for determining whether the fear was reasonable is an objective standard considering the facts and circumstances of the case. State v. Alvarez, 74 Wash.App. 250, 260-61, 872 P.2d 1123 (1994), aff'd, 128 Wash.2d 1, 904 P.2d 754 (1995).
¶ 24 Here, neither RCW 9A.46.020 nor the definition of "threat" in RCW 9A.04.110 requires the State to prove a nonconditional present threat for a jury to find the person making the threat guilty of a gross misdemeanor harassment.[9] Although Edwards involved a threat against property under RCW 9.61.160 and not a threat against a person, the analysis and holding is otherwise on all fours with the present case. We do not distinguish between threats against property and people and the Edwards holding applies equally to cases involving harassing conditional threats made against a person.
¶ 25 To the extent Cross argues that the circumstances under which he made his threat reflected the condition that he was in handcuffs and that condition precluded Officer Williams from taking the threat seriously, we disagree. Cross's feet were not shackled and, although Cross was in handcuffs when he threatened to assault Williams "if he wasn't in handcuffs," Cross would not remain handcuffed indefinitely and could carry out his threat at some time in the future. 5 RP at 331.
¶ 26 Thus, we hold that neither the criminal statute nor applicable statutory definition requires that a threat to harm a person must be unconditional to support a harassment conviction. In addition, when the condition stated is temporary, the State need not prove a nonconditional present threat to support a jury's verdict finding that the victim's fear of the threat was reasonable.
¶ 27 Sufficient evidence supports the jury's verdict finding Cross guilty of gross misdemeanor harassment. Here, Officer Williams indicated that Cross made his threat while handcuffed in the back of his patrol car. At the time of the threat, Williams knew that Cross had fled the scene because Williams had responded to Officer Lopez-Sanchez's call for assistance and Williams had already had to forcibly restrain Cross so that Lopez-Sanchez could frisk him for weapons. In addition, Lopez-Sanchez had described to Williams the path of the chase and the yard where the fight occurred and asked him to check for any evidence along the route. Thus, the jury could reasonably infer from the officers' testimonies that Williams had knowledge of the extent of Cross's assaultive ability from his efforts to resist arrest and from his fight with Lopez-Sanchez. Moreover, Williams testified that he took Cross's threat to "kick [Williams's] ass" "seriously" and that he had been previously assaulted by *296 handcuffed defendants.[10] 5 RP at 332. Williams noted that handcuffed defendants "can do things to assault you not with their hands" such as "kick or bite or headbutt" you. 5 RP at 332. In light of all the evidence, Cross's threat, as well as Cross's belligerent and assaultive conduct, any reasonable juror could find beyond a reasonable doubt that Williams's concern for his safety was reasonable.
¶ 28 Cross relies on C.G. for his argument that there is insufficient evidence to support a finding that Officer Williams reasonably feared bodily harm from his conditional threat. But C.G. is distinguishable and Cross's reliance is misplaced. In C.G., a student shouted, "I'll kill you Mr. Haney, I'll kill you" to her school's vice principal. 150 Wash.2d at 606-07, 80 P.3d 594. The State charged C.G. with felony harassment because her threat involved death. RCW 9A.46.020(2). Our Supreme Court had to determine whether sufficient evidence supported a finding that Haney reasonably feared that C.G. would carry out this threat and cause Haney's death. At trial, Haney did not testify that he believed C.G. would kill him; instead, he testified that C.G.'s threat caused him concern only about a future "harm." C.G., 150 Wash.2d at 607, 80 P.3d 594. On this testimony, our Supreme Court reversed C.G.'s felony harassment conviction, holding that the evidence was insufficient to prove Haney's fear of death as a result of the threat. C.G., 150 Wash.2d at 610, 80 P.3d 594. Our Supreme Court suggested that if the State had charged C.G. with gross misdemeanor harassment, the evidence could have established that Haney feared bodily harm that and supported a gross misdemeanor harassment conviction even though the evidence could not support a finding that Haney reasonably feared death as a result of the threat. See C.G., 150 Wash.2d at 611, 80 P.3d 594. Here, the State charged Cross with gross misdemeanor harassment and there is sufficient evidence to support the jury's finding that Officer Williams had a reasonable fear that bodily harm could have resulted from Cross carrying out his threat to "kick [Williams's] ass." 5 RP at 332. Accordingly, we affirm Cross's gross misdemeanor harassment conviction.

B. Unlawful Possession of a Firearm
¶ 29 In his SAG, Cross challenges the sufficiency of the State's evidence for his unlawful possession of a firearm conviction. He argues that the jury used assumptions, rather than facts, when finding that he moved the .357 magnum revolver from his waistband to the glove compartment box. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. And a claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence. Salinas, 119 Wash.2d at 201, 829 P.2d 1068.
¶ 30 Officer Lopez-Sanchez testified that, based on Cross's movements and his refusal to comply with commands to show his hands and to "stop," that he believed Cross was dangerous and probably armed. Lopez-Sanchez also testified that when he lost sight of Cross during his arrest of Mullens, he heard a slapping sound come from inside the car that he later identified as the slamming shut of the car's glove compartment. Officer Williams found a .357 magnum revolver in the glove compartment. From this evidence and the totality of the circumstances, a jury *297 could reasonably infer that Cross had possessed a loaded .357 magnum revolver. To the extent Cross challenges Lopez-Sanchez's credibility, such determinations are for the trier of fact and are not subject to our review on appeal. Camarillo, 115 Wash.2d at 71, 794 P.2d 850. Substantial evidence supports Cross's unlawful possession of a firearm conviction.

Offender Score
¶ 31 Cross next challenges the inclusion of a 1991 third degree assault class C felony conviction, which has a five-year wash-out period pursuant to former RCW 9.94A.525(2)(c) (2007), in the calculating of his offender score. At sentencing, the State presented an uncertified copy of a court-generated DISCIS printout showing Cross's criminal history containing multiple misdemeanor convictions from 1990 through 2008. At trial and on appeal, Cross objected only to the evidentiary value of the DISCIS printout. We hold that for purposes of applying the Sentencing Reform Act's (SRA), ch. 9.94A RCW, wash-out provisions, a DISCIS printout, which is a document generated using the Judicial Information System (JIS), satisfies the State's burden of proving prior misdemeanor convictions by a preponderance of the evidence.
¶ 32 We review a sentencing court's offender score calculation de novo. State v. Wilson, 113 Wash.App. 122, 136, 52 P.3d 545 (2002), review denied, 149 Wash.2d 1006, 67 P.3d 1097 (2003). Under the SRA, when calculating an offender score, prior class C felonies wash out "if, since the last date of release from confinement ... or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction." Former RCW 9.94A.525(2)(c) (emphasis added). Evidentiary rules are relaxed during sentencing hearings. ER 1101(c)(3). The State must prove prior convictions by a preponderance of the evidence to have them included in an offender score calculation. Former RCW 9.94A.500(1) (2006); State v. Ammons, 105 Wash.2d 175, 186, 713 P.2d 719, 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986). The best evidence of a prior conviction is a certified copy of the judgment and sentence but other comparable evidence may be introduced if the State shows that a certified copy of the judgment and sentence is unavailable for reasons other than the serious fault of the proponent. State v. Lopez, 147 Wash.2d 515, 519, 55 P.3d 609 (2002). The State must show that the comparable evidence has some minimal indicium of reliability. See State v. Mendoza, 165 Wash.2d 913, 920, 205 P.3d 113 (2009). DISCIS printouts can satisfy the State's burden to prove prior convictions by a preponderance of the evidence. State v. Labarbera, 128 Wash.App. 343, 348, 115 P.3d 1038 (2005) (holding when the State cannot provide certified copies of the judgment and sentence for felonies, it meets its burden of proof by providing a certified copy of a DISCIS printout and presentencing investigation report); see also State v. Kolesnik, 146 Wash.App. 790, 802, 192 P.3d 937 (2008) (noting that the United States Supreme Court's holding in Blakely[11] only requires that a jury must find aggravating factors increasing a criminal penalty beyond a reasonable doubt, but it does not alter the governing law or standard of review for other sentencing issues such as the length of an exceptional sentence based on properly adjudicated facts), review denied, 165 Wash.2d 1050, 208 P.3d 555 (2009).
¶ 33 Here, Cross challenges only the reliability of a DISCIS printout and whether it satisfies the State's burden of proof.[12] DISCIS is a case management system used by courts of limited jurisdiction that draws on the JIS database and can produce a log of *298 any individual's criminal history for any case in which entries were made into the JIS. See Washington Courts: JIS Case Management Application for Courts, http://www.courts.wa.gov/jis (follow "JIS Case Management Systems" hyperlink) (last visited June 15, 2010). The JIS is the Washington courts' information system that in part "serves as a statewide clearinghouse for criminal history information, domestic violence protection orders and outstanding warrants. The benefits of [the system] are the reduction of the overall cost of automation and access to accurate statewide history information for criminal, domestic violence, and protection order history." Washington Courts: Judicial Information System, http://www.courts.wa.gov/jis (last visited June 15, 2010). The validity and reliability of criminal history reports generated from information in the JIS, such as DISCIS reports, is secure because only Washington State court personnel have access to the JIS to input case information. As such, the reports generated from the JIS are an official court record. Here, the DISCIS printout, though not certified, is a reliable source providing sufficient proof to meet the State's burden of proving by a preponderance of the evidence that Cross had misdemeanor convictions between November 21, 1996, and April 2, 2004, the only possible five-year crime-free period in light of the dates of the commission of his felonies and the corresponding sentence dates,[13] that prevented his 1991 third degree assault conviction from washing out.[14] Accordingly, the sentencing court did not err when it included Cross's 1991 third degree assault felony conviction when calculating his offender score.
¶ 34 Importantly, we note that our Supreme Court's decision in State v. Jones, 159 Wash.2d 231, 149 P.3d 636 (2006), cert. denied, 549 U.S. 1354, 127 S.Ct. 2066, 167 L.Ed.2d 790 (2007), supports our holding. The Jones court held that the prior conviction exception, which allows a trial court to determine on its own from similar records the existence of prior felony convictions at sentencing, includes the authority to determine a defendant's probation status at the time of the present offense. See 159 Wash.2d at 241, 149 P.3d 636. The Jones court reasoned that concluding that a defendant was on community placement "does not implicate the core concern of Apprendi[15] and Blakelythat is the determination does not involve in any way a finding relating to the present offense conduct for which the State is seeking to impose criminal punishment and/or elements of the charged crime or crimes." 159 Wash.2d at 241, 149 P.3d 636. Similarly, the timing of prior misdemeanor convictions used in calculating whether felony convictions proved by certified copies of the judgments and sentences should be excluded under statutory wash-out provisions is not a determination related to the core concern addressed in Apprendi and Blakely.
¶ 35 Accordingly, we affirm Cross's convictions and sentence.
I concur: HUNT, P.J.
HOUGHTON, J.P.T.[16] (dissenting).
¶ 36 For the reasons set forth below, I dissent from the majority analysis on the *299 search incident to arrest issue. I concur in the analysis of the remainder of the issues.
¶ 37 In State v. McCormick, Judges Houghton (writing), Armstrong (concurring), and Penoyar (concurring) held that defendants may raise an admissibility of evidence challenge on appeal without having done so in the trial court, following a change in the law under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). McCormick, 152 Wash.App. 536, 540, 216 P.3d 475 (2009). The McCormick opinion called into question another panel's decision in State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), which denied a similar challenge on appeal.
¶ 38 Following McCormick, in State v. Harris, another panel, Judges Armstrong (writing), Penoyar (concurring), and Quinn-Brintnall (dissenting), declined to hold that a defendant waived his right to challenge a search under Gant by failing to bring a then meritless motion to suppress before the pre-Gant trial. Harris, 154 Wash.App. 87, 99, 224 P.3d 830 (2010). More recently, in State v. Burnett, 154 Wash.App. 650, 228 P.3d 39 (2010), a third panel, Judges Penoyar (writing) and Houghton and Van Deren (concurring), followed McCormick. To date, Judges Quinn-Brintnall, Bridgewater, and Hunt have followed the Millan analysis and Judges Houghton, Armstrong, Van Deren, and Penoyar have followed the McCormick and Harris analyses.
¶ 39 Under RCW 2.06.040, the Court of Appeals hears cases in three-judge panels. Because we do not sit en banc, our opinions on the issue of waiver in post-Gant admissibility of evidence challenges lack uniformity. Justice demands that the outcome of similar cases on the same issue should not depend on the composition of randomly selected three-judge panels. This lack of uniformity should be addressed by our Supreme Court as soon as practical.
¶ 40 For the reasons I set forth in McCormick, Kevin Cross may raise this issue on appeal. Therefore, I dissent.
NOTES
[1] Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).
[2] RAP 10.10.
[3] At sentencing, the State alleged that Cross has multiple aliases, including Mike Rivers, David Calley, Mickey Rivers, Michael Johnson, Michael Broom, Kevin Avery, and Dan Jackson. The State also linked three different social security numbers and three separate birth dates to Cross.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Officer Williams testified at trial that Cross stated he "would kick [his] ass if he wasn't in handcuffs," but in his police report, Williams wrote that Cross stated he "could kick [his] ass if he wasn't in handcuffs." Compare 5 RP at 331 with Clerk's Papers at 56 (emphasis added). Cross highlighted this difference pretrial, but he indicated that he did not believe there were any material differences in these alternative statements.
[6] Cross does not challenge the search under our state constitution.
[7] We note that State v. McCormick, 152 Wash. App. 536, 540, 216 P.3d 475 (2009), questioned Millan's holding, but McCormick is distinguishable and, thus, its comments regarding Millan are dicta because McCormick timely filed a pretrial motion to suppress under CrR 3.6 whereas Millan did not.
[8] We take this opportunity to note what we perceive as an incorrect remedy applied in recent Division Two Gant cases involving preservation issues. The courts in McCormick, 152 Wash.App. 536, 216 P.3d 475, and State v. Burnett, 154 Wash.App. 650, 228 P.3d 39 (2010), in addition to the failure to apply long-standing preservation rules, invoke what we perceive to be an incorrect remedy. Those courts either (1) reverse and dismiss the conviction or (2) reverse and remand with an instruction that the trial court dismiss the relevant charges. McCormick, 152 Wash. App. at 540-44, 216 P.3d 475 (reversing after holding the search was unconstitutional under Gant because the State conceded on appeal that it had no alternative basis to argue the validity of the search on a remand); Burnett, 154 Wash. App. at 652-53, 228 P.3d 39 (applying the exclusionary rule when remanding and directing the trial court to dismiss a methamphetamine conviction based on an unlawful search).

Implicit in the McCormick and Burnett rulings is a finding that, as a matter of law, the State cannot produce any evidence on remand to justify the warrantless search of the vehicle. But an appellate court has no authority to make such a finding, whether express or implied, and cannot summarily dismiss a case by applying the exclusionary rule itself. To reach the remedy applied in McCormick and Burnett, an appellate court must either have the power to hold full evidentiary hearings or have the power to independently review evidence to develop answers to previously unraised suppression theoriesappellate courts have no such authority. Our authority on appeal is limited to a review of the trial court's application of the exclusionary rule, and we do not possess an inherent authority to review evidence and apply the exclusionary rule. See State v. Maxfield, 125 Wash.2d 378, 385, 886 P.2d 123 (1994) (an appellate court will not independently review the evidence presented at a CrR 3.6 suppression hearing). Finally, although we disagree with the majority's preservation analysis in Harris, we recognize that the Harris majority did apply the appropriate remedy by remanding for a fact-finding suppression hearing. 154 Wash. App. at 101, 224 P.3d 830.
The McCormick and Burnett courts attempt to justify their remedy by accepting the State's purported concession. McCormick, 152 Wash.App. at 544, 216 P.3d 475; Burnett, 154 Wash.App. at 652-53, 228 P.3d 39. But we should not accept such concessions on appeal because there may be other evidence supporting the warrantless search that the trial attorney failed to present because he or she obtained a favorable ruling using other evidence and other legal theories. Moreover, our knowledge of facts on issues ancillary to those preserved in the record on appeal is limited and, except as to matters occurring before it, appellate courts are incompetent fact finders.
[9] RCW 9A.04.110 states,

In this title unless a different meaning plainly is required:
....
(27) "Threat" means to communicate, directly or indirectly the intent:
(a) To cause bodily injury in the future to the person threatened or to any other person; or
(b) To cause physical damage to the property of a person other than the actor; or
(c) To subject the person threatened or any other person to physical confinement or restraint; or
(d) To accuse any person of a crime or cause criminal charges to be instituted against any person; or
(e) To expose a secret or publicize an asserted fact, whether true or false, tending to subject any person to hatred, contempt, or ridicule; or
(f) To reveal any information sought to be concealed by the person threatened; or
(g) To testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
(h) To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or
(i) To bring about or continue a strike, boycott, or other similar collective action to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships.
[10] Cross argues that Officer Williams testified that he "was not concerned with being directly assaulted" as a result of the threat. 5 RP 332-33. But Cross's characterization of this testimony is over generalized and taken out of context. Williams made this comment after testifying that Cross made the threat while "secured in the back of my vehicle, which is separated from the driver's area" and then expressed concern that Cross could carry out the threat "if he was out of the vehicle." 5 RP at 332-33. Williams subsequently testified that he believed that "if the opportunity had arose, had [he] turned [his] back or let [his] guard down" that Cross "could have taken the opportunity to cause harm." 5 RP at 369. The totality of Williams's testimony clearly indicates concern for his physical safety when he had to remove Cross from his patrol car for booking purposes. To the extent Cross challenges Williams's credibility, we do not review credibility determinations. Camarillo, 115 Wash.2d at 71, 794 P.2d 850.
[11] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[12] On appeal, Cross presented arguments challenging only the evidentiary value of uncertified copies of DISCIS printouts to meet the preponderance of evidence burden of proof and did not present any arguments challenging the State's need to rely on comparable evidence to meet its burden. Accordingly, we only address the reliability of DISCIS printouts and whether they fulfill the State's burden of proving Cross's felony convictionwhich had been proved by a certified copy of the judgment and sentencehad not washed out because Cross had not been crime free for the time required by statute.
[13] We note that there are five separate scrivener's errors concerning the dates of crimes and dates of sentences listed in Cross's current judgment and sentence for his prior third degree assault, residential burglary, and 2006 unlawful possession of a controlled substance convictions. The correct dates are reflected in the certified copies of Cross's prior felonies that are contained in the record on review. Our review of the correct dates reveals that the only possible five-year crime-free period occurred between Cross's November 1996 sentencing for a second degree robbery conviction and the April 2004 date of his unlawful possession of a controlled substance conviction.
[14] We note that the JIS and DISCIS system are electronic databases and that the sentencing court itself could easily and quickly verify from the bench the accuracy of any printouts presented if there are specific questions as to its accuracy. We draw an analogy to a trial court's ability to take judicial notice of records where the information is readily verifiable by sources whose accuracy cannot reasonably be questioned as in its own files. ER 201(b)(2).
[15] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[16] Judge Houghton is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 12(c).