FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 MAR -3 AM IO: 17



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 69538-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SERGIO AUGUSTIN DONATO, | FILED: March 3, 2014 |
| Appellant. | |

LEACH, C.J. — In this prosecution for felony harassment and other acts of domestic violence, the trial court failed to instruct the jury on the "true threat" requirement for felony harassment. Because the error was harmless beyond a reasonable doubt and because the court acted within its discretion in concluding that two of the offenses were not the same criminal conduct, we affirm.

## FACTS

Based on allegations that Sergio Donato assaulted and threatened to kill his live-in girl friend, Vivian Gonzalez, the State charged him with felony harassment, third degree assault, and interfering with domestic violence reporting.

At trial, the court admitted a recording of a 911 call Gonzalez made shortly after noon on May 1, 2012. On the recording, Donato and Gonzalez can be

heard speaking in Spanish. A translated transcription of the recording admitted at trial[1] states in part as follows:

> [Gonzalez]    Help me.
> . . . .
> [Donato]    To you. . . Nothing will happen to the child. The problem is with you.
> [Gonzalez] But it's just that . . .
> . . . .
> [Donato]    I can't involve the child with anything. . . .
> [Gonzalez] Please stop! [crying]
> [Donato]    . . . .The problem is with you, uh?
> [Gonzalez]   But why do you want to take my son with you?
> [Donato]    The problem is with you bitch! Let's go dude.
> [Gonzalez] You've already been told that . . . [crying]
> [Donato]    If I kill you, I will kill you, I won't do anything to the child. Uh? Just you.
> [Gonzalez] [crying]

During the next portion of the recording, Donato questioned Gonzalez repeatedly as to whether she had used her phone to call the police. Gonzalez cried throughout this portion of the recording. The transcript ends with the following statements:

> [Donato]    Did you call the police?
> [Gonzalez] Please . . . stop!
> [Donato]    Hand me the phone.
> [Gonzalez] Please . . . just go! Go!
> . . . .
> [Gonzalez] Let go of me! Don't hit me! Please! Noooo! No . . . the child! [Screams] [crying] Please . . .

---

[1] The court admitted two different translated transcriptions of the 911 call. The State's transcription, quoted above, was prepared with forensic audio tools. The interpreter who prepared the other transcription did not hear the threat to kill but did not use audio tools and conceded that using them could have captured more audio detail.

[the call was cut off]

Gonzalez did not appear at trial. The State's witnesses testified that Renton Police Officer Desiree Scott immediately responded to the 911 call. When she arrived at Gonzalez's home, the front door "flew open," and Gonzalez ran toward her. Gonzalez yelled "help!" and cowered behind Officer Scott. According to Scott, Gonzalez was "hysterical" and clutching her son as she ran from the home. Another officer on the scene, Officer Scott Phipps, testified that Gonzalez bolted from the home like she was "being chased."

Using gestures and fractured English, Gonzalez said through tears that Donato had just beaten her and that she was afraid. She clutched at her ribs and pointed out injuries on her head, back, side, and legs. She pointed to a belt and then to a mark on her back that was consistent with a belt mark. She showed the officers a "goose egg bump" on the top of her head, pointed to her foot and then to Donato, saying, "Kicked head." She also pointed to some boots, then to some of her injuries, and gestured in a manner that indicated she was struck by boots. Photographs of her injuries were admitted at trial.

Eventually, Donato emerged from the house with a belt draped around his neck. He told Officer Scott that Gonzalez fell off the bed during an argument and hit her head. While he admitted to "some pushing" during the argument, he denied hitting Gonzalez.

A defense investigator testified that a few weeks after the incident, Gonzalez asked a municipal court to dissolve a no-contact order against Donato that had been issued in another case.

A jury convicted Donato as charged. At sentencing, defense counsel argued that the assault and harassment convictions were part of the same criminal conduct and should therefore count as one offense in Donato's offender score. Counsel argued that the offenses "furthered each other in some sort of grand enterprise." The prosecutor countered that, viewed objectively, Donato's intent changed from one crime to the other. The assault, she argued, "wasn't to further any crime of threat to kill; but, rather, . . . to punish her for her acts of calling the police. And so, there is a shift in the criminal objective, or the criminal intent of the defendant." The court agreed with the prosecutor and counted the crimes separately. Donato appeals.

## DECISION

Donato first contends he is entitled to a new trial because the trial court did not give the jury a "true threat" instruction on the felony harassment count. Our courts have held that to be consistent with constitutional speech protections,

statutes criminalizing threatening language can only proscribe "true threats."[2] To be a "true threat,"

> a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in [jest or idle talk] [jest, idle talk, or political argument].[3]

Donato contends, and the State does not dispute, that the trial court erred in failing to give the jury an instruction setting forth the true threat requirement. We agree.[4]

The State argues, however, that the error cannot be raised for the first time on appeal and was harmless in any event. Assuming, without deciding, that failure to give the instruction was manifest constitutional error,[5] we conclude the error was harmless. "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have

---

[2] State v. Allen, 176 Wn.2d 611, 626, 630, 294 P.3d 679 (2013) (no constitutional violation occurred where "the jury was instructed as to the true threat requirement").

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 72 (3d ed. 2008); Allen, 176 Wn.2d at 626.

[4] See Allen, 176 Wn.2d at 626-30.

[5] Under State v. Schaler, 169 Wn.2d 274, 287-88, 236 P.3d 858 (2010), it could be argued that omission of the instruction is manifest constitutional error if the instructions given "allowed the jury to convict . . . based on [the] utterance of protected speech" and the court could have corrected the error.

reached the same result in the absence of the error."[6] Having listened to the 911 recording and reviewed the record, we are convinced beyond a reasonable doubt that giving the omitted instruction would not have changed the jury's verdict.

The 911 transcription begins with Gonzalez pleading for help. Then Donato, who is apparently in the middle of a threatening statement, says to Gonzalez, "To you. . . Nothing will happen to the child. The problem is with you." He proceeds to tell Gonzalez that he "can't involve the child with anything" and that "[t]he problem is with you bitch." This is followed by a threat: "If I kill you, I will kill you, I won't do anything to the child. . . . Just you." Near the end of the call, Gonzalez screams, "Let go of me! Don't hit me! Please! Noooo!" Donato's statements are made in an angry tone, and Gonzalez is alternately crying or screaming throughout the recording. Considering the threat in the context of all the circumstances, no reasonable person in Donato's position could believe that the threat would be interpreted as anything other than a serious threat.

Donato contends a reasonable person in his position could view the threat as conditional and therefore not serious. But a conditional threat is still a threat for purposes of criminal harassment,[7] and it is a "true threat" if the circumstances

---

[6] State v. Guloy, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985); see also Schaler, 169 Wn.2d at 288 (failure to give true threat instruction is harmless "when it is clear that the omission did not contribute to the verdict").

[7] See State v. Cross, 156 Wn. App. 568, 580-84, 234 P.3d 288 (2010) (citing State v. Edwards, 84 Wn. App. 5, 12, 924 P.2d 397 (1996)).

convey a genuine intent to harm the person threatened.[8] As discussed above, when viewed in context and from the perspective of a reasonable person in Donato's position, the threat can only be viewed as a serious threat. The error was therefore harmless.[9]

Donato also contends the court abused its discretion in concluding that the harassment and assault convictions were not the same criminal conduct. Crimes are considered the same criminal conduct if they require the same criminal intent, are committed at the same time and place, and involve the same victim.[10] We review a court's same criminal conduct determination for abuse of discretion.[11]

Here, there is no dispute that the crimes were committed at the same time and place and involved the same victim. The only issue is whether the offenses shared the same criminal intent. Whether crimes share the same criminal intent depends on "'the extent to which the criminal intent, objectively viewed, changed from one crime to the next. . . . This, in turn, can be measured in part by whether one crime furthered the other.'"[12]

---

[8] See State v. Williams, 144 Wn.2d 197, 211-12, 26 P.3d 890 (2001) (fired employee's statement to former employer—"Don't make me strap your ass"—was sufficient, under the circumstances, to prove felony harassment).

[9] In light of our conclusion, Donato's claim that his counsel was ineffective for failing to request the omitted instruction fails.

[10] RCW 9.94A.589(1)(a).

[11] State v. Wilson, 136 Wn. App. 596, 613, 150 P.3d 144 (2007).

[12] State v. Williams, 135 Wn.2d 365, 368, 957 P.2d 216 (1998) (alteration in original) (quoting State v. Vike, 125 Wn.2d 407, 411, 885 P.2d 824 (1994)).

Donato contends his objective intent did not change between the offenses because the offenses were part of a brief, uninterrupted sequence of events, and the assault furthered the threat by putting Gonzalez in reasonable fear that the threat would be carried out. But the record also supports a conclusion that Donato's objective intent changed from creating fear in Gonzalez to punishing her for calling the police after the threat. Given these reasonable inferences from the evidence, the trial court did not abuse its discretion in ruling that the offenses were not the same criminal conduct.

Affirmed.

_Leach, C. J._

WE CONCUR:

_Dwyer, J._

_Cox, J._