**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MAY 18, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38781-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| LILTON LAMAR GREEN, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — RCW 9.94A.525(2)(c) erases from an offender score any previous felony conviction, other than for a sexual offense, "if, since the last date of release from confinement . . . , if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing a crime."  What if the date of sentence for any earlier conviction is more than five years before the next crime, the length of the sentence for the earlier conviction carries into the five-year window of time, but the State fails to produce evidence of the exact date of release from the earlier crime?  Appellant Lilton Green argues that the court must employ the date of the

No. 38781-0-III
*State v. Green*

sentence to calculate the time in the community. We disagree. We affirm the superior

court's refusal to wash out, from the offender score, two convictions entered more than

five years before the next criminal act because the sentence for the convictions

necessarily resulted in Green remaining confined during the five-year limitation period.

FACTS

The facts controlling this appeal entail earlier convictions and sentences imposed

on appellant Lilton Green. On November 29, 1995, the Benton County Superior Court

sentenced Green on two class C felony convictions of felony telephone harassment. The

court imposed ninety days of confinement to county jail, which it converted to eighty-

nine days of partial confinement for work release, while recognizing a credit for one day

already served. The judgment ran the sentence beginning November 29, 1995, with

Green not reporting to jail until the availability of a work release bed.

On December 5, 1995, the Benton County Superior Court filed an amended

judgment and sentence. We do not know for certain the reason for an amended

judgment, but speculate the court updated the sentence because of the previous lack of

the availability of a work release bed. The amended judgment imposed the same

sentence: eighty-nine days of partial confinement listed as commencing on November 29,

1995, and recognizing one day of credit for time already served.

On June 27, 2001, the Benton County Superior Court sentenced Lilton Green on a

new felony telephone harassment conviction. The judgment and sentence listed the date

2

No. 38781-0-III
*State v. Green*

of crime as December 19, 2000. The superior court sentenced Green to thirty days already served.

PROCEDURE

We move to the prosecution on appeal. In 2021, a jury convicted Lilton Green of violating a protection order. At sentencing, the State calculated Green's offender score as seven. In response, Green argued that his two 1995 convictions for felony telephone harassment should "wash out." Therefore, Green asked the court to set his offender score at five.

Lilton Green argued that, although the two 1995 judgments and sentences sentenced him to confinement, the State lacked any jail records to establish the date of his release. According to Green, the sentencing court needed to assume release on the date of sentencing, or November 29, 1995, in accordance with RCW 9.94A.525(2)(c). Five years expired between the date of sentencing and the commission of telephone harassment on December 19, 2000.

The State agreed it lacked records as to Lilton Green's date of release from confinement for his 1995 felonies. The State, however, responded that Green could not have completed his term of confinement for the convictions more than five years before the commission of the December 19, 2000 crime. The State posited that Green was sentenced on November 29, 1995. The 1995 judgment and sentence imposed eighty-nine days of jail, beginning November 29, in addition to the one day credited to Green. Green

3

No. 38781-0-III
*State v. Green*

must have remained confined until February 26, 1996. He re-offended December 19, 2000, within five years of February 26, 1996.

The State recognized the possibility of a generous good time credit, but insisted that any possible good time credit would not shorten his confinement to a date more than five years preceding December 19, 2000. Even if a work release bed was available for Lilton Green on November 29, 1995, for the release to have occurred more than five years before the 2000 crime, authorities must have released Green by December 19, 1995, twenty days after Green entered jail on his eighty-nine-days sentence.

The trial court concurred with the State's argument. The court observed a "factual impossibility" of Lilton Green's release from jail in 1995-96 more than five years before the December 19, 2000 crime. The trial court included the two 1995 convictions in Lilton Green's criminal history. Nevertheless, the court granted Green an exceptional sentence below the standard range because, on two separate occasions, the defendant's prior felony history narrowly failed to wash out.

LAW AND ANALYSIS

Lilton Green's sole assignment of error on appeal is the sentencing court's inclusion of the two 1995 felony convictions in his offender score. He repeats his contention that, due to the absence of direct evidence as to the date of his release from the 1995 sentence, this court must assume his release on the date of sentencing, more than

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38781-0-III
*State v. Green*

five years before his December 19, 2000 telephone harassment. At the least, we must assume release on some date before December 19, 1995. We disagree.

First, we perform some mathematical calculations with dates. Although the 1995 initial and amended judgments and sentences read that the term of confinement began on November 29, 1995, we assume the eighty-nine days of confinement did not begin until Lilton Green procured a work release bed. We do not know the date of procurement so we give Green the benefit of the doubt and assume his confinement began on November 29.

The State recognizes that jail authorities could have afforded Lilton Green early release for good-time behavior. In 1995, the maximum good-time credit permitted in a county facility could not exceed one-third of a total sentence. Former RCW 9.92.151 (1990). Good-time is calculated based on the total sentence imposed, not the amount of time an offender is incarcerated. *In re Personal Restraint of Williams*, 121 Wn.2d 655, 658, 853 P.2d 444 (1993). One-third of a ninety-day sentence is thirty days. So Green would be confined for at least sixty days. Green was credited with one day for time already served, and sixty days minus one day is fifty-nine days. Thus, the soonest Green could have been released from confinement was January 27, 1996. Green could not have served his final date of confinement by December 19, 1995.

5

No. 38781-0-III
*State v. Green*

The controlling statute, RCW 9.94A.525(2)(c), declares:

> [C]lass C prior felony convictions other than sex offenses shall not be included in the offender score if, *since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence*, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

(Emphasis added.) The italicized portion of the statute, the "trigger clause," identifies the beginning of the five-year washout period as either (1) the last date of release from confinement pursuant to a felony conviction, or (2) the date of entry of the judgment and sentence. *State v. Ervin*, 169 Wn.2d 815, 821, 239 P.3d 354 (2010). Lilton Green characterizes the second option as the default provision if and when the State cannot affirmatively establish a definitive date of release. We disagree.

When contemplating the meaning of a statute, we seek to divine the legislative intent and interpret the statutory provisions in a way that carries out that intent. *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 163, 471 P.3d 853 (2020); *In re Dependency of G.M.W.*, 24 Wn. App. 2d 96, 122, 519 P.3d 272 (2022). If the plain language is subject to only one interpretation, our inquiry ends. *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 163 (2020). We derive plain meaning from the context of the entire statute. *In re Dependency of Z.J.G.*, 196 Wn.2d 152, 163 (2020).

We highlight that RCW 9.94A.525(2)(c) references a release date, "if any." This language shows an intent to employ the date of judgment only if the court never

6

No. 38781-0-III
*State v. Green*

sentenced the offender to confinement. The language does not create a trigger date of the date of the judgment if the offender was released from jail, but no records confirm the exact date of release. The statute affords the sentencing court no discretion in choosing the trigger date. The statute does not evidence a preference between the two options. If one trigger date is preferred, that date is the release date.

*State v. Schwartz*, 6 Wn. App. 2d 151, 429 P.3d 1080 (2018), *aff'd*, 194 Wn.2d 432, 450 P.3d 141 (2019) asked the question of whether time spent in confinement for failure to pay legal financial obligations interrupts the running of the five-year washout period for RCW 9.94A.525(2)(c). Although *Schwartz* involved a disparate issue, we adopt the reasoning employed by the decision with regard to the release from confinement always being the measuring date if the offender spent time in jail. We wrote:

> When a statute speaks of "A, if any, or B" the words "if any" can reasonably communicate that A is to apply if it exists, and only if it does not exist will B apply. That is reasonably communicated by the trigger clause. In most cases, there will be a "last date of release from confinement . . . pursuant to a felony conviction," and that will be the trigger. Less often, there will be no period of confinement, either because the seriousness level and offender score are both low, a sentencing alternative is ordered, or the court imposes an exceptional sentence. In those cases, entry of the judgment and sentence will be the trigger. The clause cannot reasonably be read to create truly alternate dates . . . because the judgment and sentence date would always be more favorable and the "last day of release from confinement" would never apply.

7

No. 38781-0-III
*State v. Green*

*State v. Schwartz*, 6 Wn. App. 2d 151, 156-57 (2018) (some alterations in original)

(footnotes omitted).

In support of his reading of RCW 9.94A.525(2)(c), Lilton Green forwards the

principle that the State bears the burden of establishing earlier convictions. *State v.*

*Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). We note this rule, but further

observe that the State met its burden to establish a conviction on November 29, 1995,

with a sentence of eighty-nine days in jail.

Lilton Green wisely cites *State v. Havens*, 171 Wn. App. 220, 286 P.3d 722

(2012), in support of his position. Former RCW 9.94A.760(4) (2009), afforded the State

ten years in which to enforce legal financial obligations without applying for an

extension. The ten years commenced on "the offender's release from total confinement

or within ten years of entry of the judgment and sentence, whichever period ends later."

*State v. Havens*, 171 Wn. App. 220, 223 (2012). The record did not establish the date of

Frank Havens' release from confinement. Therefore, this court held that the ten years

began on the date of the judgment and sentence. The superior court had entered the

judgment and sentence more than ten years before the State applied to extend the

collection deadline.

The State, in *State v. Havens*, noted that the judgment and sentence imposed a

one-year sentence. If the State had released Havens from confinement at the end of the

one year, the release would have occurred within the ten-year limitation period.

8

No. 38781-0-III
*State v. Green*

Nevertheless, the State never asserted this argument before the trial court. This court wrote: "The record is not sufficiently developed to address this new contention." 171 Wn. App. 220, 224 (2012). Thus, the court considered the date of the judgment as the only date certain to make the beginning of the ten years.

Although helpful, *State v. Havens* delivers little solace for Lilton Green. The former RCW 9.94A.760(4) added the language, missing from RCW 9.94A.525(2)(c), of applying whichever period ends later. The former RCW 9.94A.760(4) lacked the key language, from RCW 9.94A.525(2)(c), of the confinement, "if any." The State did not assert any argument about a presumptive release date until the appeal. This court cited no decisions in support of its holding.

We deem Lilton Green's appeal to entail more an issue of evidence and proof rather than of statutory construction. The relevant question becomes whether a judgment and sentence may establish the outer boundaries of a confinement period when the State cannot prove the actual final date of confinement. RCW 9.94A.525(2)(c) does not identify the nature of the evidence needed to prove the date of release.

The reliability of a judicial filing permits a sentencing court to take notice of facts flowing directly therefrom. *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 256-57, 111 P.3d 837 (2005). A Washington court may rely on a judgment and sentence alone to prove the existence of a prior foreign conviction. *In re Personal Restraint of Lavery*, 154 Wn.2d 249, 256-57 (2005). Further, a sentencing court may reference a reliable judicial

9

No. 38781-0-III
*State v. Green*

record to determine facts underlying a prior foreign conviction. *State v. Thiefault*, 160 Wn.2d 409, 419-20, 158 P.3d 580 (2007); *Shepard v. United States*, 544 U.S. 13, 24-26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (plurality opinion).

We conclude that the State may rely on a judgment and sentence to establish the impossibility that an offense has washed out. A judgment and sentence demonstrates on its face whether the sentencing court ordered a period of confinement. Armed with this reliable information, a court can discern the possibility that an offender was released before a certain date. By referencing applicable early release rules, this court can determine from a judgment and sentence alone the earliest possible confinement release date.

*State v. Cross*, 156 Wn. App. 568, 589, 234 P.3d 288 (2010), *vacated on remand*, 166 Wn. App. 320, 271 P.3d 264 (2012), suggests the State possesses the burden to disprove a washout. This rule echoes the statutory imperative that the State carry the burden of establishing by a preponderance of the evidence the accuracy of the offender score. RCW 9.94A.500(1); *State v. Wilson*, 113 Wn. App. 122, 136, 52 P.3d 545 (2002). Assuming, without holding, that the State bears the burden of disproving a washout, we conclude the State fulfilled this burden by a preponderance of evidence as to Lilton Green's 1995 convictions not being erased from the offender score.

10

No. 38781-0-III
*State v. Green*

CONCLUSION

We affirm the superior court's calculation of Lilton Green's offender score, and, in turn, his sentence for violating a protection order.

_____
Fearing, CJ.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.