IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31390-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AHMIN R. SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — New technology creates new ways to terrorize. Text messaging is one such technology.

A jury convicted Ahmin Smith of four counts of felony harassment with domestic violence enhancements for threatening to kill his wife, Crystal Miller-Smith, and the wife's father, mother, and stepmother. Smith asks this court to reverse his convictions and dismiss the charges, contending the evidence supporting his convictions is insufficient. In the alternative, he asks for a new trial arguing that impermissible testimony and inadmissible evidence improperly swayed the jury. Finally, Smith assigns error to the trial court expressing concern for his competency but failing to hold a competency hearing. We affirm Ahmin Smith's convictions.

FACTS

Ahmin Smith's convictions stem from a slew of text messages he sent his estranged wife, Crystal Miller-Smith, during the evening of August 12, 2012.

In late July 2012, Crystal Miller-Smith moved out of the home she shared with her husband, Ahmin Smith, because she feared for her and her child's safety. Over the next weeks, Smith attempted to reconcile with Miller-Smith, vacillating between seeking forgiveness and threatening to "beat her ass." Report of Proceedings (RP) at 381. As the weeks passed, Smith increasingly sent text messages to Miller-Smith's iPhone, so frequent that his messages filled her inbox. His textative behavior required her to delete messages to free space for new ones and led her to mute her phone's ringer when she retired to bed.

In the evening of August 12, Crystal Miller-Smith prepared, at her aunt's house, for a Native American naming ceremony. She quieted the ringer to her phone. When she checked her phone around 7:00 p.m., she discovered more than 20 new messages from Ahmin Smith. The messages shocked and upset her. A sample of the unedited text messages she received include:

- "If i dont c u I will kill your dad quick test it he dead fuck." Ex. 1.
- "Tst it I am going 2 kill your dad & mom n one night probably kill your grandma 2 hlp her dont fuck with me" Ex. 3.
- "U have 24hrs then bodies will drop dad first I will kill him thn grandma well let deb live so she can tell." Ex. 7.

2

- "Fuck it on my way." Ex. 8.

- "Hours getting short aunty dwn street bout 2 murk your whole fam 4 one I will kill i need exaple I will." Ex. 10.

- "I kill literally." Ex. 17.

- "Bout 2 murk hin & wife Im going 2 kill dog & spread entern" Ex. 19.

- "Bye 10 am your whole family will b dead im leaving." Ex. 20.

- "I promise leaving now will enjoy cutting throat." Ex. 21.

- "Bout 2 hear momy & daddies last words they will suffer & beg me 2 end it lol." Ex. 22.

- "I am? Litrally going 2 tie him down & peel his face back & make deb watch." Ex. 24.

- "I will skin your mom n front of u will eat that bitch 2." Ex. 35.

- "Iam going 2 kill your dad & mom your lkife's gone." Ex. 37.

- "Im leaviing please stop your husnand bout 2 wreck evey thibg." Ex. 38.

- "Going 2 'murk u for hurting me u brUoght.this" Ex. 44.

- "I love u butt will kill 2 get 2 u literally." Ex. 50.
  "Guaranteed =)" Ex. 53.

(Spelling and grammar errors in original.) Ahmin Smith used the word "murk" three times in his messages. According to the Urban Dictionary, "murk" means "to <u>physically</u> beat someone so severely, they end up dying from their injuries. To beat the <u>living</u> shit outta [sic] someone. To seriously whoop somebodys [sic] ass." Finesse, *Murk*, URBAN DICTIONARY (May 6, 2004), http://www.urbandictionary.com/define.php?term=murk.

Crystal Miller-Smith, being disturbed by the messages, called Ahmin Smith to discern his mental state. During the call, he yelled and threatened to beat her. Although

3

Miller-Smith testified that she recognized his voice, Smith contends he did not speak to her.

After the phone call, Crystal Miller-Smith showed the text messages to her father, Mark Miller. The messages shocked her father and caused him to fear for his safety. Crystal Miller-Smith also showed the messages to her mother, Deborah McDonald, and stepmother, Deb Miller. Both mothers were shocked, scared, and upset by the threats because they believed "it was very possible" Ahmin Smith could carry out the threats. RP at 363. Out of fear for his family's safety, Mark Miller turned on the exterior lights to his home and set out game cameras. Game cameras are remote cameras activated by heat sensing motion detectors. Crystal Miller-Smith called law enforcement. Okanogan County Sheriff Deputy Kevin Newport met Miller-Smith at her father's residence in Pateros, where he viewed some of the text messages from Ahmin Smith. Deputy Newport asked Miller-Smith to forward any additional messages she received. Miller-Smith sent Newport a total of 92 messages.

Deputy Kevin Newport decided to arrest Ahmin Smith for felony harassment. Deputy Newport drove to the Coulee Dam police station to retrieve an officer to assist him. When the officers arrived at Smith's home around 1:30 a.m., they parked a few houses down and walked to Smith's home. As they approached, Deputy Newport observed Smith outside the home, texting on a phone. Newport quietly walked up the driveway, when Smith stood. Newport yelled that he needed to speak to Smith. Smith

4

turned and quickly moved toward the home's front door. Newport told him he was under arrest for felony harassment. Smith said, "I don't want to talk to you," went inside his residence, and closed the door. RP at 253. Deputy Newport opened the door, grabbed Smith's wrist, pulled him outside, and handcuffed him. Newport again advised Smith he was under arrest for felony harassment and uttered the *Miranda* warnings.

Shortly after arresting Ahmin Smith, Deputy Kevin Newport notified Crystal Miller-Smith of the arrest. Miller-Smith received no further text messages after Newport arrested Smith.

Deputy Kevin Newport placed Ahmin Smith in the former's patrol car. After having been read his rights, Smith yelled at Deputy Newport, claimed Newport violated his rights, stated he did not wish to speak with Newport, and directed Newport to take him to jail. Deputy Newport never asked Smith any questions. During the journey, Smith complained about Newport's driving, told Newport he slipped his handcuffs, threatened to assault Newport if he were outside the car, and repeatedly spoke of suing Newport and the Okanogan Sheriff's Department for false arrest.

## PROCEDURE

On August 16, 2012, the State of Washington charged Ahmin Smith with three counts of harassment with threats to kill, with domestic violence enhancements, in violation of RCW 9A.46.020. The State alleged that Smith knowingly threatened to kill Mark Miller, Deborah McDonald, and Crystal Miller-Smith, that each victim was a

5

family member, and that each victim was reasonably fearful because of the threat. On January 3, 2013, the State amended its information to add another count of harassment with threats to kill, domestic violence, for his threats to Debra Miller. During the course of the prosecution, Ahmin Smith repeatedly and vociferously accused law enforcement, the prosecutor, the judge, and his attorneys with misconduct.

Ahmin Smith, on his own, brought motions to suppress evidence, to dismiss the charges, to remove his counsel, for full discovery, for the trial court to take notice of ineffective counsel, for a list of all equipment an Okanogan County sheriff deputy must carry, to compel transcription of hearings, and to direct the court to follow the constitution. The trial court denied the motions.

Ahmin Smith repeatedly reserved his right to a suppression hearing. Ahmin Smith's first defense counsel, Emma Paulsen, declined to seek a suppression hearing because, regardless of the means by which the sheriff deputies apprehended Smith, the deputies gathered no evidence as a result of the arrest. On October 24, 2012, the trial court removed Emma Paulsen as Smith's counsel, at Smith's request when communications between the two deteriorated.

Ahmin Smith's second defense attorney, Michael Lynch, also concluded Smith lacked grounds for a suppression hearing. Lynch declared a hearing was unnecessary because Smith did not answer any questions from law enforcement officers. Lynch stated:

MR. LYNCH: Your Honor, there were statements that were made to the effect of, "I'm going to sue the police." There were statements made attributed to Mr. Smith at the time of his detention saying that he closed the door, meaning the door to the police vehicle, he wanted his attorney. There's an allegation that on the trip over from Coulee Dam to—Okanogan, that Mr. Smith advised—"he had been able to slip his hands out of his handcuffs and was making comments that if I stopped the car to check he would assault me."

These are not statements attributed to Mr. Smith that were in response to any questions. And I don't know if they would be germane, relevant, to the trial or not. But—a 3.5 hearing requires the court to analyze whether the defendant was in custody, and if he was in custody was he advised of his rights. The police report indicates that he was advised of his rights upon his arrest. The statements are attributed to him on the trip over.

And finally the court has to determine if the statements attributed to the defendant were made in response to police questioning. My review of the discovery material indicates that there are no 3.5 issues under that analysis.

RP at 66-67.

On January 2, 2013, the day before trial, Ahmin Smith presented the court with a letter he asserted came from the Washington State Bar Association (WSBA). Smith asserted the letter vindicated his belief that police officers recorded their encounter with him and engaged in misconduct. Throughout the proceedings, Smith frequently insisted that law enforcement recorded his encounter and that the State hid the recordings from him. Contrary to Smith's belief, the letter came from Emma Paulsen, the counsel he dismissed. In the letter, counsel responds to the grievance Smith filed against her with the WSBA, a copy of which the WSBA sent Smith. Upon learning the true nature of the letter the court engaged in a colloquy with Smith:

7

COURT: I am on the verge of considering sending Mr. Smith to Eastern State Hospital for a competency evaluation.

DEFENDANT: For wanting—for wanting my rights?

THE COURT: No.

DEFENDANT: My constitutional rights?

THE COURT: I am concerned that you have an inability to hear and understand and perceive the nature of these proceedings,—

DEFENDANT: (Inaudible)—

THE COURT: —and that you fully appreciate what's going on.

DEFENDANT: Oh, I do appreciate—.

THE COURT: All you do is—

DEFENDANT: (Inaudible).

THE COURT: All you do is interrupt, you do not listen. And I'm unclear, unsure, I'm concerned about whether or not you have the ability to listen and comprehend. Because your practice, Mr. Smith, is simply to interrupt, continually, and not to accept or listen to anything that the court is trying to tell you.

This is not—and I repeat—this is not indication from the Washington State Bar Association about evidence existing or not existing. It just isn't. Period.

DEFENDANT: Well, how (inaudible) read it?

THE COURT: You're right; I haven't read it, because—

DEFENDANT: (Inaudible)—

THE COURT: —it's not correspondence from them.

DEFENDANT: (Inaudible) this is talking about my case.

THE COURT: Once again you're expressing indication that you don't understand, you're not willing to comprehend.

DEFENDANT: (Inaudible) understand. I understand (inaudible) this evidence existed I've been asking for for the past (inaudible)—

THE COURT: Does the state have any position? I mean, the court has authority to consider a 10.77 motion on its own.

MR. BOZARTH: Your Honor, I am not in a position to evaluate whether he's competent or just obstinate, to tell you the truth. I'll leave it to the court to—to make that decision. Or Mr. Lynch—

THE COURT: Okay.

MR. BOZARTH: He's probably in a better position than I am.

THE COURT: All right.

Well, the other way to approach it, I suppose, is simply to—Mr. Smith's made his record about this evidence. I know of nothing to indicate

that in fact it does exist. Mr. Lynch, I guess I'll leave it to you to deal with during trial.

MR. LYNCH: I understand, your Honor. And I should tell the court that— If it's a question of Mr. Smith's being unable to understand where he is, what the nature of the proceedings are,—there's a very low threshold that Eastern State applies towards issues of competency. Mr. Smith hasn't demonstrated any lack of ability regarding appreciate of where he is and what's going on. He has strong opinions about things, perhaps to the detriment of his ability to understand another's point of view. But I'm not certain that that rises to the level of incompetence. I wouldn't object if the state—if the court brought it on its own motion, but—I don't feel compelled at this point to make such a motion.

RP at 137-40.

Shortly thereafter, on January 2, the trial court renewed its concern:

THE COURT: Okay.
I'm going to renew my concern about Mr. Smith's inability to comprehend, or inability and unwillingness to accept what's going on. And between now and tomorrow morning I'm going to take under advisement my own—my own concern. And counsel, you should be fully prepared; this case may not go to trial tomorrow. And if it doesn't it will be because Mr. Smith's on his way to Eastern.

I'm just not going to continue this. This is—We're not making any progress. We're not accomplishing anything. We're talking about things which we shouldn't even be talking about. Or that we've already talked about multiple times. And the reason that it's being discussed again is because of, once again, either an unwillingness or an inability to comprehend and understand what's going on.

At a readiness calendar there are basically two questions: Is the state ready, is the defense ready. Yes, or no, and that's it. We've spent a half hour talking about things which we should ordinarily have talked about tomorrow, and we've accomplished nothing.

So, I'm leaving the case set for trial.

RP at 145.

Despite defense counsels' conclusion that no hearing was needed, the trial court held a CrR 3.5 confession hearing the first day of the trial. Deputy Kevin Newport testified during the hearing. The trial court found that the statements made by Ahmin Smith to Sheriff Deputy Newport were spontaneous, unsolicited, and voluntary. Accordingly, the trial court ruled that any statements made by Smith would be admissible.

On the first day of trial, the trial court also considered a motion by Ahmin Smith to serve as co-counsel. In denying the motion, the court said:

> You are competent to stand trial. You—. I'm convinced that you understand what's going on, but, frankly, I think that—whether or not you're just trying to make this more difficult, or if you're not wanting to listen, I don't know what your intentions are. But it simply flat not appropriate to allow you to act as counsel because I fear that you would be inviting either a mistrial or, worst case scenario, a conviction that is not based on the evidence but rather your misconduct.

RP at 209.

At trial, Deputy Kevin Newport testified that, after Ahmin Smith's arrest, he explained to Smith that the arrest was for felony harassment. Newport told the jury of Smith's decision not to talk to police. Deputy Newport, in the presence of the jury, also opened a brown bag that contained Smith's cell phone. The exterior of the bag was labelled, "Felony Harassment . . . suspect* Smith, Ahmin." Ex. 105.

On January 4, 2013, a jury found Ahmin Smith guilty of four counts of felony harassment with special enhancements for threatening family members. At sentencing,

10

No. 31390-5-III
*State v. Smith*

the trial court mentioned that one juror, after the verdict, commented that "this was not a

slam-dunk; this wasn't an easy decision." RP at 515.

The trial court sentenced Smith to the top of the standard range 42 months'

confinement for each count, to be served concurrently. The court commented:

> The truth is, one of these texts to these four individuals would have been enough upon which to convict you. But the evidence is that you sent dozens of text messages to these four people which were threatening in nature and contained threats in so many words and so many different ways to kill those four individuals.
>
> To me, the sheer number, the sheer volume of the text messages is particularly disturbing. And I think because of that the evidence is overwhelming that a reasonable person could conclude that you intended to carry out the threats.
>
> This is a case of domestic violence. There's no question in my mind but that you were trying to use these threats and intimidating these people, trying to get your wife to do something, and that's classic domestic violence.
>
> . . . .
>
> With a standard range of 33 to 43 months, we know the presumptive range, the presumptive midpoint sentence of 38 months is where the court is to start in its assessment in terms of a sentence . . . .
>
> I'm satisfied that the sheer volume here of email, the threats, the nature of the threats, and—Mr. Smith's unwillingness to accept any sort of a responsibility for his actions, whether they're criminal or not, to me warrants a sentence at the higher end of the standard range.
>
> As it turns out the court's sentence this—this afternoon is three and a half years, which, if you do the math, is 41 months—42 months; correction —and so it is virtually the high end of the standard range.

RP at 516-18.

11

## LAW AND ANALYSIS

Ahmin Smith asks this court to reverse his convictions and remand his case for a new trial because inadmissible opinion testimony and unacceptable evidence improperly swayed the jury. He contends these errors alone or cumulatively are sufficient to overturn his convictions. But even considering that evidence, Smith contends the evidence supporting his convictions is insufficient. Alternatively, Smith argues the trial court erred when it expressed concern for his competency, but did not hold a competency hearing.

### *Admissibility of Evidence*

Ahmin Smith contends much of Deputy Kevin Newport's testimony was inadmissible. At trial, his counsel failed to object to most of this testimony. Under RAP 2.5, Smith is procedurally barred from raising the contentions for the first time on appeal. But RAP 2.5 provides an exception for errors of constitutional magnitude. To benefit from this exception, Smith must show the errors are "truly of constitutional dimension" and that the errors are manifest. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009); *State v. Grimes*, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011). To determine whether an error is truly of constitutional dimension, appellate courts first look to the asserted claim and assess whether, if the claim is correct, it implicates a constitutional interest as compared to another form of trial error. *O'Hara*, 167 Wn.2d at 98. There must be a plausible showing that the asserted error had practical and identifiable

12

consequences in the trial of the case. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011); *Grimes*, 165 Wn. App. at 180. If Smith shows manifest constitutional error, the burden shifts to the State to prove the errors harmless beyond a reasonable doubt. *Grimes*, 165 Wn. App. at 186. To hurdle these procedural bars, Smith alleges three errors of constitutional magnitude affected the outcome of his trial.

*Improper Opinion Testimony*

Ahmin Smith first contends the court violated his right to a jury trial and his counsel provided ineffective assistance in violation of the Sixth Amendment to the United States Constitution when the jury heard Deputy Kevin Newport testify that he arrested Smith for felony harassment and saw a brown bag containing Smith's cell phone labelled "Felony harassment . . . suspect Smith, Ahmin." Ex. 105. He argues this evidence improperly invades the fact-finding province of the jury. Both a defendant's right to a jury trial and to effective assistance of counsel are issues of constitutional magnitude. *State v. Greiff*, 141 Wn.2d 910, 924, 10 P.3d 390 (2000); *State v. We*, 138 Wn. App. 716, 730, 158 P.3d 1238 (2007). Having shown the errors are of constitutional magnitude, he must show the errors are manifest.

In the context of ineffective assistance, Ahmin Smith must show his counsel performed deficiently and, as a result, suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance based on the failure to object to the admission of testimony, Smith must

13

show that the trial court would likely have sustained the objection. *In re Det. of Stout*, 159 Wn.2d 357, 377, 150 P.3d 86 (2007); *In re Det. of Strand*, 139 Wn. App. 904, 912, 162 P.3d 1195 (2007), *aff'd*, 167 Wn.2d 180, 217 P.3d 1159 (2009). Thus, he must show Deputy Newport's testimony and exhibit 105 were likely inadmissible and as a result of admitting the evidence he suffered prejudice. As Smith admits, the test is the same for establishing practical and identifiable consequences from invading the fact-finding province of the jury. Br. of Appellant at 12-13; *We*, 138 Wn. App. at 722-23.

The burden is on Ahmin Smith to show his counsel performed deficiently. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This court starts with the strong presumption that counsel's representation was effective. *State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999). To rebut this presumption, a defendant must demonstrate trial counsel's conduct could not be characterized as a legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 17; *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

Ahmin Smith argues the court would have sustained the objection because Deputy Kevin Newport's testimony and the exhibit invaded the province of the jury by opining on a question of ultimate fact—the guilt of Smith. Smith is correct that no witness may

opine on the guilt of the accused. *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967). But neither Newport nor the exhibit opined on his guilt.

To determine whether a witness's testimony constitutes improper opinion testimony, courts consider the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and other evidence before the trier of fact. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). When a police officer opines impermissibly, it raises additional concerns because an officer's testimony often carries a special aura of reliability. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007); *State v. Rafay*, 168 Wn. App. 734, 806, 285 P.3d 83 (2012).

Ahmin Smith focuses on Deputy Kevin Newport's profession and ignores the other factors. Deputy Newport repeatedly testified that he "arrest[ed]" Smith for "felony harassment." RP at 248, 252, 254. Written on exhibit 105, a brown bag containing Ahmin Smith's cell phone, is "Felony harassment . . . suspect Smith, Ahmin." Neither is a comment on Smith's guilt. Newport testified as to why he arrested Smith. He did not declare him guilty. Smith might as well have objected to the use of jury instructions, since the instructions also stated the State charged him with felony harassment.

Smith's defense was that someone else sent the text messages. He did not contend the messages were never sent. Balancing these factors in light of the other evidence, the trial court would unlikely have sustained an objection.

15

Ahmin Smith fails to show counsel performed deficiently or that he was denied his right to a jury trial. Therefore, this court need not address the remaining ineffective assistance prong. *State v. Hendrickson*, 129 Wn.2d at 78.

*Improper Comment on Ahmin Smith's Right to Remain Silent*

Ahmin Smith next argues that Deputy Kevin Newport violated his Fifth Amendment right to remain silent when he testified that Smith did not want to talk to him. "No person shall be . . . compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V; *see also* CONST. art. I, § 9. The right against self-incrimination is liberally construed. *State v. Holmes*, 122 Wn. App. 438, 443, 93 P.3d 212 (2004). The right seeks to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of his mind, or speak his guilt. *State v. Easter*, 130 Wn.2d 228, 236, 922 P.2d 1285 (1996).

Whether a comment on a defendant's silence is of constitutional proportions depends on whether the comment was direct or indirect. *Holmes*, 122 Wn. App. at 445. If direct, the defendant need not prove the error was manifest. *State v. Romero*, 113 Wn. App. 779, 790-91, 54 P.3d 1255 (2002); RAP 2.5(a)(3). Instead, the State must prove the alleged error harmless beyond a reasonable doubt. *Romero*, 113 Wn. App. at 794.

A law enforcement officer makes a direct comment when he or she explicitly references that a defendant invoked his or her right to remain silent. *State v. Pottorff*, 138 Wn. App. 343, 346, 156 P.3d 955 (2007); *Romero*, 113 Wn. App. at 793. For example,

16

in *Romero*, this court found a police officer made a direct comment about the defendant's right to remain silent when the officer testified, "I read him his *Miranda* warnings, which he chose not to waive, would not talk to me." 113 Wn. App. at 793. Similarly, a court found an officer made a direct comment when the officer testified he read the defendant his *Miranda* rights and the defendant refused to talk. *State v. Curtis*, 110 Wn. App. 6, 9, 37 P.3d 1274 (2002).

On the other hand, a law enforcement officer makes an indirect comment on the right to remain silent when a jury could infer from the comment the defendant attempted to exercise his right to remain silent. *Pottorff*, 138 Wn. App. at 347. For example, a court found a police officer made an indirect comment when the officer testified the defendant claimed he was innocent and agreed to take a polygraph, but only after discussing the matter with his attorney. *State v. Sweet*, 138 Wn.2d 466, 480, 980 P.2d 1223 (1999). Courts deem an indirect comment on silence as not reversible error absent a showing of prejudice. *State v. Lewis*, 130 Wn.2d 700, 706-07, 927 P.2d 235 (1996); *Sweet*, 138 Wn.2d at 481. Critical to this determination of prejudice is whether there is a legitimate purpose behind the witness's comment other than to inform the jury that the defendant refused to talk to police. *Romero*, 113 Wn. App. at 789; *Curtis*, 110 Wn. App. at 13-14.

Deputy Kevin Newport testified that, as he walked up the driveway to Ahmin Smith's home, he told Smith he needed to talk to him. Newport explained that he sought

17

to "get a reaction, see how he was going to react one way or the other, at that point." RP at 252. Smith started to stand and appeared as if he was going to go inside his home. "At that point the 'I want to talk to you' wasn't going to work so [Newport] told him basically that he was under arrest for harassment, felony harassment." RP at 252. Newport testified that Smith "got up, was on the porch at that point saying 'I don't want to talk to you,' went inside the residence and closed the door." RP at 253.

Ahmin Smith maintains that Deputy Newport's testimony served no purpose other than to inform the jury the former exercised his constitutional right to remain silent. The State argues that Newport sought to explain to the jury how he conducted his investigation. But the manner of the investigation was not relevant to the issue at hand, the guilt or innocence of Ahmin Smith. Assuming the investigation was relevant, Deputy Newport could have explained how he conducted his investigation without referencing Smith's choice not to speak to police. Where, as here, there is no relevant purpose for referencing Smith's refusal to talk to police, courts find the witness directly commented on a defendant's right to remain silent. *Romero*, 113 Wn. App. at 789; *Curtis*, 110 Wn. App. at 13-14.

The State also argues Deputy Kevin Newport's comments are mere references to Ahmin Smith's silence, which were not intended to be used as substantive evidence of his guilt. "[I]t is constitutional error for a police witness to testify that a defendant refused to speak with him or her." *Romero*, 113 Wn. App. at 790 (citing *Easter*, 130 Wn.2d at 241).

18

Newport testified that Smith told him, "I don't want to talk to you." RP at 253. Deputy Newport directly commented on Smith's right to remain silent. A direct comment is an error of constitutional magnitude. *Romero*, 113 Wn. App. at 790-91.

Since Ahmin Smith shows a constitutional error, this court reviews the comment on Smith's silence under the constitutional harmless error analysis. *Romero*, 113 Wn. App. at 790-91. Unlike the other errors Smith alleged for the first time on appeal, Smith need not show the error is manifest. Instead, this court must decide if the error was harmless error beyond a reasonable doubt. *Easter*, 130 Wn.2d at 242. We conclude any error is harmless because the State never again brought up his silence and because of the overwhelming evidence against Smith.

Ahmin Smith contends Deputy Kevin Newport's comments prejudiced him because the other evidence against him was weak. To substantiate his claim, Smith emphasizes that one juror reportedly said the case was not a slam dunk. But in determining whether an error was harmless beyond a reasonable doubt, a reviewing court does not consider a comment by one juror.

The State never attempted to exploit the fact that Ahmin Smith refused to speak to police. Courts generally refuse to reverse a conviction when the comment on the defendant's silence is brief, the testimony does not imply guilt from the refusal, and the prosecutor did not refer to the statement in argument. *Lewis*, 130 Wn.2d at 706-07.

19

Deputy Kevin Newport's comment on Smith's refusal was brief, he did not imply guilt from the comment, and the State never referred to Smith's refusal in argument.

Overwhelming evidence supports Ahmin Smith's conviction. The jury saw 92 messages sent from Ahmin Smith's phone. Crystal Miller-Smith and her family testified that those gruesome threats made them fearful that he would carry them out. While Smith contends someone else sent the messages, Miller-Smith testified that she spoke with Smith over the phone between messages. On that call, she recognized his voice and he continued to threaten her. When Deputy Newport arrived at Smith's home to arrest him, Newport observed Smith on his phone, apparently texting. The texts ended with Smith's arrest. In light of this evidence, Deputy Newport's testimony that Smith refused to speak with him was harmless beyond a reasonable doubt.

*Unreasonable Seizure*

The third and last error Ahmin Smith argues is of constitutional dimension is Deputy Kevin Newport's decision to open Smith's door and arrest him without a warrant. Smith argues he preserved this issue. If this court disagrees, he argues Deputy Newport's conduct is of constitutional dimension, for two reasons, such that an objection was unnecessary. First, he argues his counsel provided ineffective assistance for refusing to raise this issue. Second, he argues Deputy Newport's seizure violated his rights under the Fourth Amendment to the United States Constitution and article I, section 22 of Washington's Constitution. Both ineffective assistance and an unreasonable seizure can

be of constitutional dimensions. *State v. Jones*, 163 Wn. App. 354, 359-60, 266 P.3d 886 (2011); *We*, 138 Wn. App. at 730.

The State contends Ahmin Smith did not preserve this issue. While Smith requested a suppression hearing, his counsel did not. When a defendant is represented by competent counsel, the attorney has the ultimate authority in deciding which legal arguments to advance. *State v. Bergstrom*, 162 Wn.2d 87, 95, 169 P.3d 816 (2007); *State v. Cross*, 156 Wn.2d 580, 606, 132 P.3d 80 (2006). That authority expressly extends to decisions about whether to seek suppression of unconstitutionally obtained evidence. *Henry v. Mississippi*, 379 U.S. 443, 451-52, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965); *see also* 3 WAYNE R. LAFAVE, CRIMINAL PROCEDURE § 11.6, Counsel's Control Over Defense Strategy (2d ed. 2004). Both of Smith's defense counsel declined to seek a CrR 3.6 hearing. Emma Paulsen, the counsel he dismissed, explained that "regardless of what the officers did in apprehending him, no evidence or information . . . was gathered as a result of that arrest." RP at 18. His second counsel, Michael Lynch, concurred. The State is entitled to rely on these representations advanced by defense counsel. *Bergstrom*, 162 Wn.2d at 96. Therefore, Smith's objections did not preserve the alleged error for appeal.

Even if this court considered Ahmin Smith's objection, his failure to specifically object barred him from claiming error. *State v. Embry*, 171 Wn. App. 714, 741, 287 P.3d 648 (2012). Smith repeatedly moved for a CrR 3.6 hearing, arguing Deputy Kevin

21

Newport illegally arrested him. But Smith never identified the testimony he wished the court to suppress.

Ahmin Smith's counsel's representations also bar him from raising the issue as a manifest constitutional deprivation of his right to be free from unreasonable seizures. Appellate courts do not review even manifest constitutional issues, if expressly recognized at trial and deliberately not litigated. *Johnson v. United States*, 318 U.S. 189, 199-200, 63 S. Ct. 549, 87 L. Ed. 704 (1943); *State v. Valladares*, 99 Wn.2d 663, 671-72, 664 P.2d 508 (1983); *State v. Hayes*, 165 Wn. App. 507, 515, 265 P.3d 982 (2011); *State v. Walton*, 76 Wn. App. 364, 370, 884 P.2d 1348 (1994). Both defense counsel articulated deliberate reasons for not requesting a CrR 3.6 hearing. They had the express authority to decide whether to seek suppression of purported unconstitutionally obtained evidence. *Henry*, 379 U.S. at 451-52. Their decisions waived Smith's ability to raise the issue on appeal. *Hayes*, 165 Wn. App. at 515-17.

To avoid the waiver, Ahmin Smith argues counsel provided ineffective assistance when they refused to request a CrR 3.6 hearing. A criminal defendant is entitled to a reasonably competent counsel to help assure the fairness of our adversary process. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). This right stems from the coextensive protections enumerated in both the federal and Washington Constitutions. U.S CONST. amend. VI; CONST. art. I, § 22. To meaningfully protect an accused's enumerated right to counsel, the United States Supreme Court held

22

an accused is entitled to "effective assistance of counsel." *Strickland v. Washington*, 466 U.S. at 686. Under *Strickland*, courts apply a two-prong test: whether (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Strickland*, 466 U.S. at 690-92. To prevail on his or her claim, a defendant must satisfy both prongs. *Hendrickson*, 129 Wn.2d at 78. If a defendant fails to establish one prong of the test, this court need not address the remaining prong. *Hendrickson*, 129 Wn.2d at 78.

To satisfy the first prong, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The burden is on the defendant to show deficient performance. *Grier*, 171 Wn.2d at 17. This court starts with the strong presumption that counsel's representation was effective. *Studd*, 137 Wn.2d at 551. To rebut this presumption, a defendant must demonstrate trial counsel's conduct could not be characterized as a legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 17; *Hendrickson*, 129 Wn.2d at 77-78. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe*, 528 U.S. at 481. To show deficient performance based on the failure to object to the admission of testimony, Smith must show that the trial court would likely have sustained the objection. *Stout*, 159 Wn.2d at 377; *Strand*, 139 Wn. App. at 912.

Ahmin Smith does not contest that Deputy Kevin Newport possessed probable cause or could make a warrantless arrest. Smith contends the trial court would have suppressed testimony regarding his post-arrest statements and actions because Deputy Kevin Newport arrested him inside his home without exigent circumstances.

The Washington Constitution and the Fourth Amendment prohibit police from making a warrantless entry into a suspect's residence to effectuate an arrest without exigent circumstances. CONST. art. I § 7; *Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State v. Holeman*, 103 Wn.2d 426, 428-29, 693 P.2d 89 (1985). Since Deputy Kevin Newport lacked a warrant, the State must show exigent circumstances merited Newport opening Smith's door to arrest him.

The State bears the burden of proving that the exigent circumstances exception applies. *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009). Appellate courts look at the totality of the circumstances to determine whether the evidence supports a finding of exigency. *Smith*, 165 Wn.2d at 518. This court considers six factors in analyzing the situation:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably.

*State v. Cardenas*, 146 Wn.2d 400, 406, 47 P.3d 127 (2002).

24

The evidence supports the finding that the exigent circumstances permitted warrantless entry and Smith's arrest. The gruesome threats to murder four people were extremely grave. Crystal Miller-Smith did not know whether Ahmin Smith possessed any weapons, but the number and nature of the threats supported a belief that Smith could be armed. The information was trustworthy. Deputy Kevin Newport observed the text messages sent to Miller-Smith, Miller-Smith verbally confirmed the messages were sent from her husband, and when Newport arrived at Smith's home, he appeared to be texting. Deputy Newport knew Smith was on the premises because he saw Smith deliberately walk into his home after Newport announced that he was under arrest. Although the record does not indicate if Smith would escape if not swiftly apprehended, the darkness lent conditions for escape. Smith was not peaceably detained. Newport and two officers dragged Smith from his home and onto the ground before handcuffing him.

The State need not prove all six factors to show exigent circumstances. *State v. Allen*, 178 Wn. App. 893, 911, 317 P.3d 494, *review granted*, 180 Wn.2d 1008, 325 P.3d 913 (2014). The balance of factors establishes exigent circumstances leading to Ahmin Smith's arrest. Therefore, counsel was unlikely to succeed in suppressing any statements made after the allegedly illegal arrest.

Trial counsel's reasons behind their respective decisions not to seek a CrR 3.6 hearing are reflected in the record. They articulated that "regardless of what officers did in apprehending him, no evidence or information . . . was gathered as a result of that

arrest." RP at 18. "So whether or not the arrest process was lawful, it d[id] not impact the evidence which the State . . . present[ed] at trial." RP at 118. Defense counsel's decisions may not have been strategic, but they were reasonable. *Roe*, 528 U.S. at 481.

Even assuming the arrest was illegal and the trial court would have suppressed the statements Deputy Newport attributed to Smith, Smith establishes no prejudice from the evidence. Smith contends he was prejudiced because the evidence against him was weak. Smith argues little evidence connects him to the text messages and the victims testified that he could carry out the threats, not that he would. We already addressed these arguments in another context and will address them again below. In short, Smith fails to show the result would have been different had the court excluded the evidence of Smith's conduct with officers.

*Bad Act Evidence*

Ahmin Smith argues the court erred by permitting Deputy Kevin Newport to testify to Smith's bad behavior after the arrest. Smith contends allowing this evidence was error since it was irrelevant to any of the charged elements and unduly prejudiced him. Smith waived any objection to his post-arrest behavior as bad act evidence. *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990). He may not raise the admission of bad act evidence for the first time on appeal because it is not of constitutional magnitude. *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984); *Chase*, 59 Wn. App. at 508.

26

*Sufficiency of the Evidence*

Ahmin Smith contends insufficient evidence underlies his convictions for felony harassment. He argues the victims, Crystal Miller-Smith, Mark Miller, Deb Miller, and Deborah McDonald, did not believe he would carry out the threats and that the text messages stated Deb Miller would live so she could watch him harm her husband, Mark Miller.

A defendant who argues insufficient evidence supports his conviction admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When reviewing a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *Romero*, 113 Wn. App. at 797 (citing *Salinas*, 119 Wn.2d at 201). This court does not review credibility determinations made by the jury. *Romero*, 113 Wn. App. at 798.

A person is guilty of felony harassment if the person knowingly threatens to kill someone, immediately or in the future, and the person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. RCW 9A.46.020; *State v. C.G.*, 150 Wn.2d 604, 609, 80 P.3d 594 (2003). The person threatened need not hear of the threat from the defendant so long as the threatened person learns of the threat and, as a result, feared the threat would be carried out. *State v. Kiehl*, 128 Wn. App. 88,

27

93, 113 P.3d 528 (2005). The statute requires the person threatened both subjectively feel fear and that fear must be reasonable. RCW 9A.46.020(1)(b); *State v. E.J.Y.*, 113 Wn. App. 940, 953, 55 P.3d 673 (2002*)*.

Ahmin Smith argues the victims did not believe he would carry out the threats, but only thought it *possible* he could carry out those threats. The State argues the victims' belief that Ahmin Smith could carry out the threats is sufficient to uphold his conviction. In *E.J.Y.*, the court found sufficient evidence where the victim testified that she was a "little frightened." 113 Wn. App. at 953. The State argues the witnesses' testimony here passes this low bar. But the *E.J.Y.* court made this statement " '[a]ssuming the evidence establish[ed] the victim's subjective fear.' " 113 Wn. App. at 953 *(*quoting *State v. Alvarez*, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995)) (some alteration in original). In other words, the State asks this court to conflate the subjective fear requirement with the requirement that the fear the victim felt was reasonable.

Next, the State equates the victims' beliefs that Smith could carry out the threats with a "conditional threat." This court upheld a defendant's conviction, where the defendant threatened to "kick [an officer's] ass, if [he] wasn't in handcuffs." *State v. Cross*, 156 Wn. App. 568, 580, 234 P.3d 288 (2010), *remanded*, 166 Wn. App. 320 (2012). The court found a conditional threat falls under the definition of a threat established in RCW 9A.04.110. *Cross*, 156 Wn. App. at 582. But the officer still had to

subjectively fear that Cross would have carried out the threat had he not been handcuffed. *See Cross*, 156 Wn. App. at 583-84. Unlike the officer in *Cross*, Smith's victims did not testify they feared he *would* carry out the threats.

Ahmin Smith's victims testified that they believed it very possible he could carry out the threats. Thus, Ahmin Smith urges the court to reverse his conviction because the victims did not use the magic word "would." But courts review both victims' words and conduct when analyzing their fear. *E.J.Y.*, 113 Wn. App. at 953. Smith's threats caused Crystal Miller-Smith enough fear that she approached her father, Mark Miller, to show him the texts. She testified that she "had no idea what he was capable of at that point, he was so angry and—threatening that [she] didn't—didn't feel like [she] could just wait to see what he would do." RP at 374-75. Miller-Smith testified that she was very upset and concerned for the safety of herself and her family. She deemed Smith capable of carrying out the threats and feared for her and her father's safety. The fear also led her to call police and change the locks on her home.

Mark Miller testified that the texts shocked him and caused him to fear for his safety. Out of fear for his family's safety, Miller turned on the exterior lights to his home and set out game cameras. Both Crystal Miller-Smith's mother, Deborah McDonald, and stepmom, Deb Miller, were also shocked, scared, and upset by the threats because they believed "it very possible" Ahmin Smith could carry out those threats since he knew where they lived. Viewing the words and conduct of the victims in the light most

29

favorable to the State, a reasonable jury could find they subjectively feared Smith would carry out his threats, regardless of whether the victims used talismanic words.

Ahmin Smith also contends insufficient evidence supports his conviction for threatening to kill Deb Miller for another reason. He argues the text messages show Deb would live so she could watch the harm done to her husband. But other text messages indicated Smith would "murk [Crystal Miller-Smith's] whole family;" that he would "murk hi[m] & wife," ostensibly Mark Miller and his wife Deb Miller; and that "bye 10 am [Miller-Smith's] whole family will b dead;" Smith "[g]uaranteed =)." Exs. 10, 19, 20, 53. Viewed in the light most favorable to the State, Smith threatened to kill Deb Miller.

*Competency*

Ahmin Smith contends the court erred when it expressed concern for his competency but did not hold a competency hearing.

Criminal defendants who lack the capacity to understand the nature and object of the proceedings against them, to consult with counsel, and to assist in preparing their defense may not be subjected to trial. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed 2d 102 (1975); *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 932, 952 P.2d 116 (1998). A competency hearing is required "[w]henever a defendant has pleaded not guilty by reason of insanity, or there is reason to doubt his or her competency." RCW 10.77.060(1). Thus, unless an insanity defense is raised, a hearing is required only

if the court makes a threshold determination that there is reason to doubt the defendant's competency. *State v. Lord*, 117 Wn.2d 829, 901, 822 P.2d 177 (1991).

The determination of whether a competency examination should be ordered rests generally within the discretion of the trial court. *State v. Heddrick*, 166 Wn.2d 898, 903, 215 P.3d 201 (2009). This court reviews a trial court's exercise of discretion for abuse. *Lord*, 117 Wn.2d at 901. A court abuses its discretion when it exercises it on untenable grounds, for untenable reasons, or uses an incorrect legal standard. *Heddrick*, 166 Wn.2d at 903.

In determining whether to order a formal inquiry into the competence of an accused, courts consider the defendant's appearance, demeanor, conduct, personal and family history, past behavior, and medical and psychiatric reports. *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967); *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001). Courts also give considerable weight to the attorney's opinion regarding his client's competency and ability to assist the defense. *Lord*, 117 Wn.2d at 901.

Ahmin Smith's personal and family history, past behavior, and medical and psychiatric reports are absent from the record, as is any mention of his appearance or demeanor. The conduct that piqued the trial court's concern and his counsel's opinion about his client's competency are recited above. The court's concern stemmed from its frustration with Smith's recalcitrance rather than his ability to aid in his own defense. No

evidence was presented that Smith is delusional, only that he refused to understand the law and maintained an obsession with a claim he was recorded.

The trial court reflected for a day whether to order a competency review. The next day, the court considered a motion by Ahmin Smith to serve as co-counsel. When denying the motion, the court observed that Smith was competent to stand trial.

On appeal, Ahmin Smith contends his statements reflected possible psychosis, obsession, delusional thinking, paranoia, or other potential mental defects. But Smith presents no evidentiary support for his possible diagnoses. Smith could not accept the lack of recordings, but many people are obstinate in their beliefs without any psychosis. As his trial counsel acknowledged, "Mr. Smith hasn't demonstrated any lack of ability regarding appreciate [sic] of where he is and what's going on." RP at 139. Weighing Smith's conduct in light of his counsel's representation, the court correctly concluded Smith was competent. The record confirms the court's decision not to hold a competency hearing.

*Cumulative Error*

Ahmin Smith contends cumulative errors warrant reversing his convictions. The cumulative error doctrine mandates reversal when the cumulative effect of nonreversible errors materially affected the trial's outcome. *State v. Russell*, 125 Wn.2d 24, 93-94, 882 P.2d 747 (1994). The only trial error was allowing Deputy Kevin Newport to testify that Smith refused to talk to him. That error is harmless beyond a reasonable doubt.

32

Therefore, cumulative errors did not deny Ahmin Smith a fair trial.

*Statement of Additional Grounds (SAG)*

Ahmin Smith contends the State improperly withheld exculpatory evidence and repeats his appellate counsel's argument that Deputy Kevin Newport's arrest was illegal. Neither argument has merit. We previously addressed the latter argument.

Ahmin Smith argues the State withheld phone records for August 12-13, 2012, and evidence that text messages continued to be sent to Crystal Miller-Smith while he was in custody. He also contends the phone records in the record on appeal are different from the records admitted at trial.

Ahmin Smith continued to send text messages until after 1 a.m. on August 13, 2012. The phone records admitted at trial only cover August 12. Smith presents no evidence that the State withheld records for August 13. There is no evidence the State possessed those records. Similarly, there is no evidence that Smith sent text messages after Deputy Newport arrested Smith. Contrary to Smith's contention, the phone records the superior court forwarded to this court are the originals, stamped as exhibit 55, and dated January 3, 2013, the day the trial court admitted the records.

*Motion to Terminate Services of Appellate Counsel*

On April 9, 2014, Ahmin Smith moved this court to terminate the assistance of his appellate counsel and appoint new counsel. Smith argues his appellate counsel provided ineffective assistance when she refused his request to raise certain issues.

33

We deny Ahmin Smith's motion because RAP 10.10 affords him the opportunity to present an SAG. This opportunity provides an effective remedy. The SAG permitted him to raise any issues he believed appellate counsel did not adequately address. RAP 10.10. The court informed him of this right in a letter dated June 3, 2013, and he exercised his right in an SAG and an amendment to the SAG, respectively filed on July 29 and August 22. In his SAG, he raised some of the issues he contends his trial counsel refused to raise.

Additionally, Ahmin Smith's appellate counsel's refusal to assert Smith's additional arguments does not constitute ineffective assistance for the same reasons we deny the issues raised in the SAG. Those issues lack merit. The remaining issues that he raised with his lawyer but not in his SAG must wait. To substantiate these claims, Smith requires additional evidence. The appropriate avenue for addressing these claims is a personal restraint petition. *State v. McFarland*, 127 Wn.2d at 335.

## CONCLUSION

We deny Ahmin Smith's motion for termination of the services of appellate counsel and affirm Smith's convictions.

34

No. 31390-5-III
*State v. Smith*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

35