**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

|  |  |
|---|---|
| THE STATE OF WASHINGTON,<br><br>               Respondent,<br><br>     v.<br><br>JANG BAHADOR SINGH,<br><br>               Appellant. | No. 84794-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Jang Singh appeals his conviction for two counts of child molestation in the first degree. Singh argues ineffective assistance of counsel at trial by counsel's failure to seek severance of the two counts and failure to request a limiting instruction on the cross-admissibility of evidence. Singh also asserts that remand is necessary to strike certain legal financial obligations. Finally, Singh makes several arguments in a statement of additional grounds (SAG). We remand for the limited purpose of striking the victim penalty assessment (VPA) and DNA collection fee. We otherwise affirm.

I

In late November 2018, 15-year-old C.X. reported sexual abuse by Singh to the Kent Police Department. Singh was the manager at the residence that C.X. and her

family lived in and his office was located downstairs.  E.X., the younger sister of C.X., reported to her mother in 2019 that Singh had also molested her.

While checking Singh's criminal history, the police discovered a documented case from 2015 when the brother of A.K. reported to police that Singh had sexually abused A.K.  At the time, the case was closed due to lack of cooperation by A.K.  Following C.X.'s report, the police followed up with A.K. and her brother.  The abuse of A.K. occurred in Singh's home while A.K. was there for tutoring.  A.K. reported that when she was between 9 and 10 years old that during one of the tutoring sessions Singh was sitting on the couch while she was on the floor and he pulled her to him and forcefully put her face to his crotch.  A.K. described Singh as masturbating with her face.  A.K. also described a time that Singh set up a video camera in his bedroom and told her to dance or do whatever she wanted in front of the camera.  While Singh was out of the room, A.K danced in front of the camera with her clothes on.  A.K.'s cousin, S.S., lived in the same neighborhood as Singh and also went to his house for tutoring. S.S. told police that A.K. had told her what happened with Singh.

Additionally, G.S. was listed as a victim in an incident reported from 2006.

B

Singh was arrested on December 20, 2018, and charged with one count of first degree child molestation against C.X. and one count of first degree child molestation against A.K.

The State later moved to join the charges with two counts of first degree child molestation against E.X. and G.S.  At the pretrial hearing on joinder, the trial court confirmed that the State was not precluding the defense from seeking severance and

-2-

heard argument on the motion to join.  Singh opposed the motion to join the counts.  On January 6, 2020, the trial court granted the State's motion and joined the counts under CrR 4.3(a).

By the time the case came to trial, Singh was represented by John Henry Browne, a colleague of Singh's former counsel.  On August 9 and 10, 2022, the trial court heard argument on motions in limine.  At this time, the State amended the information to include only the charges related to A.K. and E.X.  And the trial court noted the pretrial motion on joinder:

> THE COURT: I'm also going to ask the parties, when we do take up those pre-trial motions, in particular, the 404(b), and I don't know if—I'm not sure either of you were on the case at this time.  Judge Phelps did enter an order about cross admissibility of some of this other conduct.  It was a preliminary order and certainly without prejudice to final decision on admissibility being made now at trial.  But I would ask that the parties be prepared to address how that issue came up with respect to the, I think it was a motion to amend; is that right?
>
> MS. NORTON: Yes.  I believe it was a joinder—
>
> THE COURT: Thank you.  That's right.
>
> MS. NORTON: —a motion joinder for all four counts.
>
> THE COURT: That's right.  That's right.  So there was quite extensive briefing at that time.  And Judge Phelps did appear to anticipate some of the issues we're talking about now.  So I'm not suggesting her ruling is binding.  But I have gone through that briefing.  And I probably will ask questions about that tomorrow.  So that's a heads up.
>
> MS. NORTON: Thank you, Your Honor.
>
> MR. BROWNE: Thank you, Your Honor.  That, of course, was when there were more counts.

The State argued the evidence of uncharged prior conduct involving the incident with A.K. and the video camera and an incident where E.X. went to Singh's office for

candy and refused to sit on Singh's lap was admissible under ER 404(b). The State

argued that the video camera incident shows absence of mistake and that Singh had

the opportunity when he was alone with A.K. and the intent to have her perform and be

agreeable to his suggestions with the ultimate goal of sexual gratification. As for the lap

incident and E.X., the State argued that the purpose was to show opportunity to get E.X.

alone and Singh's behavior showed intent to manipulate or groom, intent and motive of

sexual gratification, and lack of mistake.

Browne did not oppose the prior conduct evidence:

> The evidence in this case from the State, from the alleged victims is the video camera was not on and never was, that Mr. Singh was tutoring different children at different times. By the way, by the way, Your Honor, most of the times of these allegations, Mr. Singh's own children were in the house. But that's the perfect example of how—what a stretch we're talking about here.

> The State is suggesting to the Court, it just had, that this video camera was on, and that's somehow grooming. We're using a lot of these buzz words that we hear way too often. But having said all that, I think, tactically, it's better off. I don't think I'll have any objection to the video allegation.
> . . . .
> And I don't have objection to the candy incident. It seems to me that the candy incident is part of the charges in this case.

The trial court, finding that the incidents occurred by a preponderance of the

evidence, granted the motion as unopposed. Additionally, Singh successfully moved to

exclude evidence of past allegations and acts related to C.X., G.S., and S.S.

During trial, the jury heard testimony of A.K., her mother, her cousin S.S., and

her brother. A.K. testified about the incidents consistent with her report to the police,

but recalled that while she was in front of the video camera Singh made her play a

game called "simon says" and he made her take her clothes off.

-4-

The jury also heard testimony of E.X., her mother, and the police officers who were involved in the investigations. E.X. described that during the time she was 9 to 11 years old she would go to Singh's office for candy and one time he came up behind her while clothed and rubbed his penis against her bottom. E.X. also described another time she was alone with Singh in his office and he asked her to sit on his lap but she refused and went to leave when Singh grabbed her wrist and pulled her toward his lap.

Browne did not make an opening statement and Singh did not testify or otherwise present any evidence. In closing argument, Browne stated:

> Let's take two weak cases and put them together and maybe we'll get a strong case. And the prosecutor can argue and the government can argument, and has already, that that's beyond coincidence, so therefore, one supports the other. And therefore, they're all true. There's a jury instruction that says you must consider the evidence as it relates to each crime independently.
>         . . . .
> Salem witch hunt was started by two little girls [who] made up rumors and lies that turned into a prosecution of innocent women who were hung and burned, things like that.
>         . . . .
> The government suggests Mr. Singh, by offering candy to kids in the neighborhood and being nice to them, to begin with was grooming them. It's like trying to prove he's not a witch.

The jury was instructed to decide each count separately and received to convict instructions for each count. On August 23, 2022, the jury found Singh guilty of two counts of child molestation in the first degree.

C

On September 2, 2022, Singh moved for a new trial under CrR 7.5(a) arguing ineffective assistance of counsel by Browne for failing to move for severance. In a declaration, Browne stated that he was unaware of the option to move for severance

and had he been aware he would have moved to sever. Represented by new counsel, Singh again moved for a new trial and asserted that Browne's failure to sever was a mistake rather than a strategic or tactical decision.[1] The State argued even if Browne had sought severance, it would not have been granted, and Singh was not prejudiced by the cross-admissible counts being tried together.

At the hearing on the motion, Browne testified that he did not see the order on joinder until the day Singh was convicted and that had he been aware of the order he would have moved to sever pretrial. Browne stated that he had moved to sever on prior cases and stated: "I knew very well the law about severance and joinder . . . I taught law for five years, so I did have the knowledge that I could have done these things. I just neglected to." On cross-examination, Browne also testified that he was aware of the severance rule:

> [Ms. Norton]: Your testimony is that you were not aware that you were allowed to move to [sever] in this case; is that correct?
> [Mr. Browne]: No. I was certainly aware. I just didn't do it.
> [Ms. Norton]: So you were aware that you were—
> [Mr. Browne]: Well, I know what the law is.
> [Ms. Norton]: —you could—
> [Mr. Browne]: Mm-hmm.
> [Ms. Norton]: —move to sever?
> [Mr. Browne]: Yes.
> [Ms. Norton]: But you chose not to?
> [Mr. Browne]: No. I didn't choose not to. I just forgot to.

Browne acknowledged that the ruling on joinder was discussed on the first day of trial. Browne also testified that he remembered a discussion about 404(b) evidence but did not recall whether or not the motion was granted.

---

[1] From the record it appears no ruling was made on the first motion for a new trial.

After the hearing, the trial court made the following relevant findings:

6. There was an extensive ER 404(b) analysis conducted pre-trial in this matter over the course of two days. The trial court did not adopt Judge Phelps' prior rulings. The trial court conducted an independent analysis of the ER 404(b) issues based on briefing, motions and stipulations by the State and defense.

8. The Court does not find it credible that Mr. Browne, an attorney practicing for 50 years who holds himself out as extremely familiar with the severance rule including through its application in his prior cases, would not realize he could seek severance pretrial or at trial.

9. Instead, the Court finds that John Henry Browne made a strategic decision not to seek severance.

The trial court concluded that, under the test established in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Browne's performance was not deficient when he made the strategic decision to not seek severance. The trial court also concluded that Singh was not prejudiced by Browne's decision because evidence for both counts was cross-admissible.

On November 18, 2022, Singh was sentenced to two indeterminate terms of 75 months to be served concurrently. Singh was ordered to pay restitution, a VPA, and a DNA collection fee.

Singh timely appeals.

II

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant in a criminal proceeding is guaranteed the right to effective assistance of counsel. Strickland, 466 U.S. at 684-86. To establish ineffective assistance of counsel, a defendant must demonstrate both (1) that counsel's representation fell below an objective standard of reasonableness and (2)

resulting prejudice— a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish either element, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335. To demonstrate deficient performance, a "defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." McFarland, 127 Wn.2d at 336.

To establish the prejudice prong, the defendant must show that "in the absence of counsel's deficiencies, there is a reasonable probability that the result of the proceeding would have been different." In re Matter of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." State v. Crawford, 159 Wn.2d 86, 100, 147 P.3d 1288 (2006) (quoting Strickland, 466 U.S. at 694). "In other words, '[t]he likelihood of a different result must be substantial, not just conceivable.'" Lui, 188 Wn.2d at 539 (quoting Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

"A claim of ineffective assistance of counsel presents a mixed question of fact and law reviewed de novo." State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). A trial court's findings of fact are reviewed for substantial evidence and the legal conclusions flowing from such findings are reviewed de novo. State v. Lopez, 190 Wn.2d 104, 117-18, 410 P.3d 1117 (2018). Evidence is substantial if it is sufficient to

persuade a rational, fair minded person of the truth of the finding. Blackburn v. State, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016). "So long as this substantial evidence standard is met, 'a reviewing court will not substitute its judgment for that of the trial court even though it might have resolved a factual dispute differently.'" Blackburn, 186 Wn.2d at 256 (quoting Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)).

Singh makes two arguments related to ineffective assistance of counsel. We address each in turn.

A

Singh first argues Browne's failure to seek a severance of the two charges was deficient. Singh contends that the trial court's finding of fact 9, that Browne made a strategic decision not to seek severance, is unsupported by the record.[2] We disagree.

First, the trial court found that Browne's claim that he did not know he could seek severance was not credible. In unchallenged finding of fact 8, the trial court found that "Browne, an attorney practicing for 50 years who holds himself out as extremely familiar with the severance rule including through its application in his prior cases, would not realize he could seek severance pretrial or at trial."[3] We will not disturb the trial court's credibility determinations on appeal. See In re Pers. Restraint of Davis, 152 Wn.2d 647,

---

[2] Singh also points to the admission of ER 404(b) evidence to show that Browne's failure to move to sever the two counts was unreasonable. However, this argument ignores that Browne did not object to the State's 404(b) evidence and Singh does not argue ineffective assistance of counsel based on that failure to object. Absent an objection, any error under ER 404(b) is waived. State v. Elmore, 139 Wn.2d 250, 283, 985 P.2d 289 (1999); RAP 2.5(a).

[3] Unchallenged findings of fact are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

680 101 P.3d 1 (2004) ("A trial court's credibility determinations cannot be reviewed on appeal, even to the extent there may be other reasonable interpretations of the evidence."); State v. Cross, 156 Wn. App. 568, 581, 234 P.3d 288 (2010) ("The trier of fact makes credibility determinations that we do not review on appeal.").

The trial court's credibility determination is supported by the record. In his declaration, Browne stated he was not aware of the option to sever and yet he testified that he knew very well the severance rule and that he "just didn't do it." Browne's testimony makes clear that he was aware of and familiar with severance and had used the rule in prior cases. Browne acknowledged the order on joinder at the start of trial when the trial court specifically noted that the order was not binding and asked counsel to be prepared to discuss cross-admissibility and 404(b) evidence.

Second, in unchallenged finding of fact 7, the trial court explained Browne's strategic decision: "Browne stated on the record at trial, in argument to the jury, that the State joined two weak cases together in order to give the jury one strong case, and he used this statement in closing in an attempt to persuade the jury." This finding is also supported by the record.

The record establishes that Browne believed the evidence was weak on both counts and part of the strategy at trial was to attack the credibility of A.K. and to show a potential motive for both A.K. and E.X. to lie. As described by the trial court, "the crux of [Browne's] cross-examination was that [A.K.] was being untruthful . . . or that her accounts were not credible . . . and it was implied that she was blaming Mr. Singh for a number of events in her life." And Browne attempted to show that E.X. and her family

had problems with Singh as their landlord, such as the family being evicted and other disputes related to a loan.

Then, in closing argument, Browne referenced the State combining two weak cases to present a strong case then reminded the jury to consider evidence as it related to each count independently. Presumably, Browne did so to highlight the weakness of evidence to create reasonable doubt in each case before concluding with a reference to two girls making up rumors and the Salem witch trials. Browne's strategy relied on using weak or unreasonable evidence in both cases to suggest each count was no more than a witch hunt.

Considering the strong presumption that counsel was effective, Browne's decision not to seek severance of the two counts was based on legitimate strategy and tactics. Because Browne was not deficient under the first prong of the Strickland test, Singh fails to establish a claim for ineffective assistance of counsel.[4]

B

Singh next argues he was denied effective assistance of counsel when Browne failed to request a limiting instruction on the cross-admissibility of evidence on each of the allegations for a nonpropensity purpose. We disagree.

Where evidence is admitted under ER 404(b), "the party against whom the evidence is admitted is entitled, upon request, to a limiting instruction informing the jury that the evidence is to be used only for the proper purpose and not for the purpose of proving the character of a person in order to show that the person acted in conformity

---

[4] Because failure to establish either prong of the Strickland test is fatal to Singh's claim, we do not address Singh's argument regarding prejudice under the second prong.

-11-

with that character." State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Washington courts have long held that a failure to request a limiting instruction can be a tactical decision. See, e.g., State v. Price, 126 Wn. App. 617, 649, 109 P.3d 27 (2005), overruled on other grounds by State v. Hampton, 184 Wn.2d 656, 361 P.3d 734 (2015); State v. Donald, 68 Wn. App. 543, 551, 844 P.2d 447 (1993); State v. Barragan, 102 Wn. App. 754, 762, P.3d 942 (2000).

Singh points to State v. Yarbrough, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009), in which failing to seek a limiting instruction was tactical because counsel wanted to avoid highlighting prior bad act evidence. Singh argues that such a strategy is not reasonable here and so Browne's failure was deficient. The record shows a legitimate tactical reason for Browne to not request a limiting instruction. At trial, Singh's theory was that the allegations were fabricated and during cross-examination and in closing arguments, Browne challenged the credibility of A.K. and E.X. Given such a strategy, it is logical that Browne would seek to avoid a limiting instruction that would highlight the prior bad act evidence in a way that implicitly affirms the truthfulness of the alleged acts. See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.30 (5th ed. 2021).

Here, the case against Singh turned primarily on the credibility of A.K. and E.X. and whether the jury believed their testimony. The trial court granted the State's motion to admit the video camera incident and lap incident. Browne did not oppose the evidence and said, regarding the video camera incident, it would be better off "tactically." Rather than seeking to limit the testimony regarding the video camera incident, during cross-examination of A.K. and during closing arguments, Browne

pointed to inconsistencies and the unreasonableness of A.K.'s testimony. Similarly, regarding E.X., Browne's strategy was to attack her credibility and the reasonableness of her testimony. Browne closed with a reference to two girls making up rumors and the Salem witch trials. Singh fails to show an absence of legitimate tactic or strategy.

Because Singh does not satisfy the first prong of the Strickland test, Singh's claim of ineffective assistance of counsel for not seeking a limiting instruction fails.[5]

III

Singh argues that remand is necessary to strike the VPA and the DNA collection fee because he is indigent and recent legislation prohibits imposing the fees. The State does not dispute Singh's indigency and does not oppose remand for the limited purpose of striking the VPA and DNA fee.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1. In addition, the legislature eliminated the DNA fee entirely. LAWS OF 2023, ch. 449, § 4. Our courts have held that recent amendments to statutes governing LFOs apply retroactively to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

---

[5] Singh also argues reversal is warranted under the cumulative error doctrine. The cumulative error doctrine requires reversal when a defendant establishes that multiple accrued errors rendered a trial "fundamentally unfair," even if these errors were individually harmless. State v. Carte, 27 Wn. App. 2d 861, 885, 534 P.3d 378, 392 (2023) (citing State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012)), review denied, 2 Wn.3d 1017 (2024). Because Singh does not establish multiple errors at trial, the cumulative error doctrine does not apply. Additionally, because failure to establish either prong of the Strickland test is fatal to Singh's claim, we do not address Singh's argument regarding prejudice under the second prong.

We accept the State's concessions and remand to strike the VPA and the DNA collection fee.

IV

Singh raises several other grounds for review in his SAG. We address each in turn. First, Singh argues that RCW 9A.44.020(1) is unconstitutional. This court reviews de novo a challenge to the constitutionality of a statute. State v. Jackson, 28 Wn. App. 2d 654, 672, 538 P.3d 284 (2023). Statutes are presumed to be constitutional and the party challenging the constitutionality of a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt. Jackson, 28 Wn. App. 2d at 672. Wherever possible, this court should interpret a statute to uphold its constitutionality. State v. Batson, 196 Wn.2d 670, 674, 478 P.3d 75 (2020).

RCW 9A.44.020(1) states, "In order to convict a person of any crime defined in [chapter 9A.44 RCW, sex offenses] it shall not be necessary that the testimony of the alleged victim be corroborated." While Singh makes several arguments about the constitutionality of the statute, his broad claims fail to carry his burden to establish that RCW 9A.44.020(1) is unconstitutional beyond a reasonable doubt.

Second, Singh argues prosecutorial misconduct based on the following actions by the prosecutor: (1) improper vouching for the credibility of A.K. and E.X. during opening statement and closing argument; (2) stating that Singh gave candy to both A.K. and E.X.; (3) encouraging jurors to put themselves in position of a witness; and (4) implying a duty to convict.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecuting attorney's conduct was both improper and prejudicial. State v. Weber,

159 Wn.2d 252, 270, 149 P.3d 646 (2006). If the defendant did not object at trial—as is the case here—the issue is waived unless the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Under this heightened standard, the defendant must show that (1) "'no curative instruction would have obviated any prejudicial effect on the jury'" and (2) the misconduct resulted in prejudice that "'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

In large part, Singh's claims are either without merit or "too vague to allow us to identify the issue." State v. Bluehorse, 159 Wn. App. 410, 436, 248 P.3d 537 (2011). Although the State's reference in its opening statement to both girls being offered candy is unsupported by the evidence—only E.X. testified that Singh offered her candy—Singh does not explain how the State's mention of it would not be cured by an instruction or that the alleged misconduct had a substantial likelihood of affecting the jury. Moreover, during an opening statement, a prosecutor may state what the evidence is expected to show. State v. Brown, 132 Wn.2d 529, 563, 940 P.2d 546 (1997). Singh fails to show prosecutorial misconduct.

Third, Singh argues the trial court erred by failing to conduct an ER 403 and ER 404(b) analysis. But this argument either restates arguments made by counsel or fails to recognize that Browne did not object to the 404(b) evidence. When a SAG contains alleged errors that "have been thoroughly addressed by counsel" they are "not proper matters for [the] statement of additional grounds under RAP 10.10(a)." State v. Thompson, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

Fourth, Singh argues he was denied the right to a unanimous verdict. To convict a defendant of a criminal charge, the jury must be unanimous that the defendant committed the criminal act charged. State v. Coleman, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007). When the State presents evidence of multiple acts that relate to one charge, the State must either elect which act is relied on for a conviction or the trial court must instruct the jury to unanimously agree on one specific criminal act. Coleman, 159 Wn.2d at 511. Here, there were two charges and evidence of one act related to each charge. There was no need to instruct the jury on multiple acts related to one charge.

Fifth, Singh argues the trial court exceeded its authority by imposing a sentence above the standard range. The legislature has established the required minimum and maximum terms for child molestation in the first degree. The minimum term must either be within the standard sentence range for the offense or outside the standard range if substantial and compelling reasons justify an exceptional sentence. RCW 9.94A.507(3)(c)(i). While the minimum term provision gives judges some discretion, the maximum term is set by statute. RCW 9.94A.507(3)(b). Child molestation in the first degree is a class A felony carrying a maximum sentence of life in prison. RCW 9A.44.083(2); RCW 9A.20.021(1)(a). Thus, the legislature has prescribed the minimum and maximum terms a judge must impose for child molestation in the first degree.

Here, the standard range for child molestation in the first degree was 67 to 89 months. The trial court sentenced Singh to two concurrent terms of 75 months and, as required by the statute for a class A felony, a maximum term of life. Singh was not sentenced above the standard range.

Sixth, Singh lists several miscellaneous arguments: (1) that certain e-mails and texts related to jury selection and other evidence excluded during motions in limine should be part of this review; (2) that the trial court abused its discretion by failing to inquire about an "altercation" occurring outside the courtroom during trial; (3) violation of attorney client privilege because of Singh's hearing issues and technical problems with microphones; and (5) an abuse of process during voir dire by ruling that counsel could not pose questions to the jury using the phrase "if you were innocent."

Singh's arguments either lack merit, are too vague, or rely on matters outside the record. While a SAG need not include citations to the record or legal argument, the appellant must "inform the court of the nature and occurrence of the alleged errors." RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This court cannot review a SAG claim if it is too vague to properly inform of the claimed error. Bluehorse, 159 Wn. App. at 436. Additionally, if a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition, not by direct appeal. See McFarland, 127 Wn.2d at 335.

Seventh, Singh argues ineffective assistance of counsel by Browne because of his poor health, diminishing memory, confusion, and heavy work load while short staffed. "[A]ttorneys and judges may have disabilities of all kinds, mental as well as physical, but that alone does not disable them from practicing law or adjudicating cases. The ability to be an effective professional depends, instead, on the actual effect of the disability on the attorney's performance." Lopez, 190 Wn.2d at 118. Although Singh provides citations to the record, his broad claims either fail to explain how the cited

actions were deficient and resulted in prejudice, or points to errors addressed by counsel above and thus are not properly included in a SAG. Thompson, 169 Wn. App. at 493.

We affirm the judgment and sentence and remand for the limited purpose of striking the VPA and the DNA collection fee.

_Mann, J._

WE CONCUR:

_Birmingham, J_   _Dwyer, J._